EDWARD McDONALD, plaintiff in error, *vs.* HENRY O. BEALL, defendant in error.

1. Where suit is brought to recover the purchase money paid for land on account of a failure of title, or upon the basis of a rescission for fraud, and the defendant pleads the general issue, and also a special plea setting up an indebtedness to the defendant for the balance of the purchase money, it was error in the court to exclude evidence sustaining said second plea.

2. Where the plaintiff seeks to recover the purchase money paid by him for land, treating the contract of sale as rescinded, he must account for the value of the use thereof whilst he was in possession.

3. Where the main question in issue turned upon the terms of a verbal sale of land, and one of the parties has given his version, the other may testify as to what was said and done upon the same occasion.

4. Irrelevant and hearsay testimony should be excluded.

5. The fact that a juror was one of the jury which tried the case upon a former trial, is no ground of new trial. The exercise of ordinary diligence would have enabled the defendant, or his counsel, to have discovered the fact before the trial.

6. Where the right of the plaintiff to recover depends upon whether he has been evicted from certain lands purchased from the defendant, under paramount title, such question is one of fact for the determination of the jury.

7. To charge upon an assumed state of facts is error.

8. To charge that one of the parties to a suit, under a certain writing in evidence, did not have a title, is an invasion of the province of the jury, and error.

9. In this state there is no implied warranty of the title to land in the sale of it.

10. To entitle the plaintiff to treat the contract of sale of the property as rescinded as a foundation for the recovery of the purchase money paid therefor, where there was no covenant of warranty, he must show such fraud on the part of the defendant in respect to the title as would authorize a rescission.

Vendor and purchaser. Rescission. Evidence. Jury. New trial. Title. Charge of Court. Warranty. Before Judge TOMPKINS. Randolph Superior Court. May Term, 1875.

Reported in the decision.

H. & I. L. FIELDER, for plaintiff in error.

A. HOOD ; B. S. WORRILL, for defendant.

WARNER, Chief Justice.

The plaintiff alleges in his declaration that the defendant is indebted to him in the sum of $1,750 00, which sum he paid defendant under a contract for the purchase of certain described mill property in the county of Randolph, of which he took possession, and was afterwards turned out of the possession thereof by paramount title.

On the trial of the case the jury, under the charge of the court, found a verdict for the plaintiff for the sum of $1,728 29.

McDonald *vs.* Beall.

The defendant made a motion for a new trial on the several grounds set forth therein, which was overruled by the court, and the defendant excepted.

When this case was before this court on a former occasion, (*E. McDonald vs. H. O. Beall, 52d Georgia Reports*, 576,) the plaintiff based his right to recover on the theory that having purchased the land of the defendant and paid for it, he was bound to make him a good title thereto, and as he had been evicted from the possession of the land by a paramount title to that of the defendant, he had the right to treat the contract of purchase as rescinded, and to recover back the purchase money paid for the land. The defendant in the court below demurred to the plaintiff's declaration on the ground that the plaintiff had not alleged that the defendant had covenanted to warrant the title to the land. The court below overruled the defendant's demurrer, and this court affirmed its judgment, for the reason that the plaintiff might show by evidence at the trial such fraudulent representations by the defendant as to his title, or such fraudulent conduct in relation thereto as would entitle the plaintiff to recover back the purchase money independently of any covenant of warranty of title to the land. On the former hearing of the case it was held and decided that under the evidence contained in the record then before it, the plaintiff had failed to show an eviction by paramount title to that of the defendant, and on that ground, this court reversed the judgment and ordered a new trial.

It appears from the evidence in the record of the last trial, that in 1865, O. P. Beall, the father of the plaintiff, purchased the mill property from the executors of James Morris, deceased, the defendant being equally interested in the purchase thereof, took their bond for title, paid $1,000 00 for his half of the mill property, and the defendant paid $1,000 00 for his half of it. On the 15th of November, 1866, the executors of Morris made a deed to the defendant of one undivided half of the mill property, the witness, O. P. Beall, could not state whether defendant ever saw or knew of the deed to him. O.

McDonald *vs.* Beall.

P. Beall went into bankruptcy in 1868.  O. P. Beall sold his interest in the mill property to his son, the plaintiff, at what time the record does not show.

The plaintiff testified in his own behalf, that for a debt due to him by his father, O. P. Beall, he bought a half interest in the mill property from him, and went into the possession thereof, with the understanding that his father held a bond for title from the executors of Morris, and that he would not take a title from his father, O. P. Beall, but that his title was to be made to him from the executors ; that after plaintiff had bought his father's half of the mill property, he proposed to defendant to sell, or buy his interest in it ; defendant preferred to sell, and offered to take the $1,000 00 he had paid to the executors, and what heh ad expended in repairs, and which was due him by Beall & McDonald ; defendant, on looking at his books, thought the amount would be about $1,750 00 ; that there might be a few small items not entered ; plaintiff agreed to pay defendant that amount, he stating that he could not tell the exact sum ; the payments to be made in installments of $100 00 per month, until the whole amount was paid, which has been done.  There was nothing said about a title to the property between plaintiff and defendant ; took no deed, or other obligation in writing of any kind ; never called on defendant for a deed, or title at any time.  This is the version given of the trade by the plaintiff himself.  The plaintiff, or his father, has been in possession of the property all the time, the latter claiming now to be in possession under a contract made with Smith, the purchaser at the marshal's sale under an execution against the executors of Morris.  The plaintiff read in evidence an execution from the district court of the United States, in favor of Davenport, against the executors of James Morris, issued on a judgment obtained on the 1st of May 1868, against them, which had been levied on the mill property, as the property of James Morris, deceased, which property, with other property levied on at the same time, was all sold for the sum of $700 00 and purchased by Smith, on the 6th of December, 1870.  The judgment against the ex-

ecutors of Morris, is one year and nearly six months younger than their deed to the defendant. The plaintiff also read in evidence a deed made to him by the executors of Morris, for the one undivided half of the mill property, dated 15th of November, 1866. The defendant, who was examined as a witness in his own behalf, substantially corroborated the plaintiff's statement as to the manner and terms of the sale of the mill property, except that the defendant stated that it was the understanding at the time of the trade, that he was not to make a title to the plaintiff or be responsible in any way for the title, but only agreed to turn over to the plaintiff his interest in the mill property, and that he was to take it just as it was, and that he must look to his father and the Morris' for a title; that plaintiff never asked him for a title, or notified him in any way that he expected a title from him, or that he held him responsible for the purchase money of the mill, until he sued him ; knew nothing of the deed having been made by the executors of Morris to him, until about a year ago when it was brought into court on the trial. The will of James Morris was read in evidence, by one clause of which his executors were authorized to sell the property, but was silent as to whether it should be sold at public or private sale.

1. One of the alleged grounds of error in the motion for a new trial is, that the court rejected the evidence offered by the defendant to sustain his plea of set-off against the plaintiff. It was competent for the defendant to have proved the indebtedness of the plaintiff to him in relation to their mutual dealings under their contract for the sale of the mill property, as set forth in the defendant's plea, and the court erred in rejecting the evidence offered for that purpose.

2. The court also erred in refusing to allow the defendant to prove the value of the rent for the use of the property whilst in the possession of the plaintiff. The plaintiff sought to have the contract of sale of the property rescinded and to recover back the purchase money paid therefor, treating the property as the defendant's property. In that view of the case, the plaintiff was not entitled to recover back the pur-

McDonald *vs.* Beall.

chase money paid for the property, without accounting for the use of it during the time he had it in his possession.

3. The court erred in ruling out that part of the defendant's evidence that he told the plaintiff, at the time of the trade, "that he must take the property as a man takes his wife, for better or for worse." The plaintiff had testified in relation to what was said and done at the time of the trade, and it was competent for the defendant, the other party, to testify as to what was said and done at the same time.

4. There was no error in ruling out the draft offered in evidence by the defendant. The draft was not drawn by the plaintiff on the defendant, but was drawn by another person and it was not shown what connection it had with the purchase of the mill property. The court erred in allowing O. T. Beall to testify, over defendant's objections, as to the sayings of Davenport and Harriet Morris, "that the consideration of the debt upon which the judgment and *fi. fa* that sold the property were founded, was the sale of the land by Davenport to Morris." This was hearsay evidence; and besides, it was irrelevant to the issue on trial.

5. There was no error in overruling the objection as to the juryman Grayson, because he was one of the jurors who had rendered a verdict for the plaintiff on a former trial of the case. The exercise of ordinary diligence would have enabled the defendant and his counsel to have discovered that fact before the trial. There was no error in refusing the defendant's written request to charge the jury in relation to the four years' possession of the plaintiff, as against the Morris judgment, on the statement of facts disclosed in the record.

6. The court erred in its charge to the jury, "that under the evidence in the case there had been an eviction of the plaintiff by paramount title." Whether there had been an eviction of the plaintiff from the possession of the mill property, under a paramount title, was a question of fact for the jury, under the evidence, and not a question for the court to decide.

7. The court erred in charging the jury "If you find, from

the evidence, that the plaintiff, H. O. Beall, while in possession, did pay defendant $1,738 29, upon a contract that defendant should give him good titles to said land when it was paid, and that he was afterwards evicted, you should find that amount in favor of the plaintiff against the defendant, with interest, if you see fit to find it." There is no evidence in the record of any *contract* that the defendant should give to the plaintiff *good titles* to the land when the money was paid, therefore this part of the charge was based on an *assumed* state of facts not proved by the evidence in the case. The court also erred in charging the jury "that if defendant suffered plaintiff to go into possession, under the agreement that he would make titles to plaintiff, and plaintiff paid him $1,738 29, and was thereafter evicted," etc. There is no evidence in the record of any *agreement* by defendant that he would make *titles to the plaintiff for the land* at any time.

8. The court also erred in the following charge: "I charge you that, under the writing in evidence, McDonald did not have a title." The court might properly have instructed the jury what was necessary under the law to constitute a title, but when it undertook to decide upon the evidence before the jury, it invaded their province; if the evidence was legally admissible to go before the jury, it was there for their consideration and judgment, and not for the judgment and *positive declaration* of the court. The court also erred in charging the jury, in view of the evidence in the record, "If defendant sold the plaintiff his interest in the lands, to be paid for by the plaintiff when titles were to be made, and the plaintiff afterwards vacated the land because it was sold at United States marshal's sale, under the *fi. fa.* in evidence, I charge you that this was a legal eviction." There is no evidence in the record that the defendant sold his interest in the land to the plaintiff to be paid for by the plaintiff, *when titles were to be made.*

9. The verdict was contrary to law and the evidence as applicable thereto, and the new trial should have been granted on that ground. In this state, there is no implied warranty

of title to land in the sale of it.   In this case there is no pretense that there was any express covenant of warranty of the title to the land sold by the defendant to the plaintiff, either by writing or by parol, if indeed a parol covenant of title to the land would have been binding on the defendant.

10.  There is no evidence of any *fraudulent* representation by the defendant to the plaintiff as to the title which he had to the land at the time of the sale, or fraudulent conduct on his part which would have authorized the plaintiff to rescind the contract of sale on the ground of *fraud.* The plaintiff's own evidence is, that at the time of the purchase of the land from the defendant, there was nothing said about a title between them, and that he had never called on him for a title at any time. Although there is no positive evidence that the plaintiff knew all about the title of the defendant to the land when he purchased it from him, yet all the circumstances connected with the entire transaction, are of such a character as to lead the mind almost to the irresistible conclusion that he *did* know all about it at the time of his purchase.  The plaintiff took a deed to the undivided half of the mill property, which he purchased from his father, from the executors of Morris, and when he applied to the defendant to purchase *his* undivided half of that same property, he says, that the defendant told him he would take the $1,000 00 he had paid out to the Morris', and what he had expended in repairs, etc.   Did not the plaintiff know for what the $1,000 00 had been paid by the defendant to the Morris' for, which he agreed to repay to him in the trade, for his undivided half of the mill property which had been been once owned by the Morris'?   To entitle the plaintiff to treat the contract of sale of the property as rescinded, and to recover back the purchase money paid therefor, he was bound to show either a breach of of a covenant of warranty of title by the defendant, or such *fraud* on his part in respect to the title, as would authorize a rescission of the contract on the latter ground.   The evidence in the record does not show either a covenant of warranty of title, or any

*fraud* on the part of the defendant which would in law authorize a rescission of the contract.

In this view of the case under the evidence disclosed in the record, as well as for the numerous errors committed by the court on the trial, we reverse the judgment.

Let the judgment of the court below be reversed.