## STATE *vs.* GEORGE W. CONGDON.

Two judges heard the demurrer to a plea in abatement of an indictment. The opinion of the court sustaining the demurrer was drawn up by one of them, assented to by the other, and delivered by the writer sitting alone. Both judges subsequently sat at the trial on a plea of not guilty to the indictment.

A statute provided that two judges should be a *quorum* for the trial of such cases, that the court should be always open, and that judgments made in one county might be certified to another.

*Held,* that there was no irregularity which could be reason for a new trial after conviction.

A petition for a new trial on the ground that one of the jurors was disqualified by a relationship of consanguinity is addressed to the discretion of the court.

Such a petition will not be granted when the relationship was by consanguinity in the sixth degree, was probably unknown to the juror, and was not shown to have injuriously affected the accused.

When a view is had in a criminal case the accused may waive his right to be present at the view. Such a waiver is presumed when he does not ask to be present and makes no ob-

jection in the course of the trial after the view; and when the view was allowed at the request of his counsel, who stated that the health of the accused precluded his attendance.

DEFENDANT'S petition for a new trial in the Court of Common Pleas.

After the proceedings reported, *ante*, p. 267, a new indictment was found in the Court of Common Pleas at its October Term, A. D. 1883, charging the defendant with murder. After conviction of manslaughter under this indictment he filed a petition in the Supreme Court for a new trial for the reasons considered in the following opinion.

*Providence, April* 4, 1884. DURFEE, C. J. The first ground assigned for new trial is that the prisoner's plea in abatement was overruled by only one judge, whereas the statute requires two judges to make a *quorum* for the trial of indictments for crimes punishable by death or imprisonment for life. Pub. Stat. R. I. cap. 193, § 2. The plea was tried on demurrer before Justices Stiness and Tillinghast, and the affidavits show that, after deliberation and conference, they both concurred in the conclusion that it was bad. The opinion drawn up by Judge Tillinghast was approved by Judge Stiness. On the day to which the court had been adjourned, Judge Stiness being too ill to attend, Judge Tillinghast attended alone, and with the assent and approval of Judge Stiness announced the decision of the court, *i. e.* of both judges. If this were all that occurred it would be difficult to hold that the judgment was invalid in view of our statute; for our statute provides that the court shall be always open, except for certain purposes, among which the overruling of a plea in abatement is not included, and that all judgments, authorized by the provision, may be made in any county and transmitted for record to the county where the causes in which they are made are pending. But this is not all that occurred. The court met at a later day, both judges being present, and, with full knowledge of what had been done, proceeded with the cause. The prisoner was arraigned and pleaded not guilty, without objecting that the plea in abatement had not been overruled, and thereupon a jury was empanelled and the prisoner tried and convicted of manslaughter. Now if we regard what was done by Judge Tillinghast, in the

absence of Judge Stiness, as a mere announcement of the opinion of the court, nevertheless when afterwards the court, both justices being present, proceeded with the cause, as if judgment on the plea in abatement were entered pursuant to such announcement, we think their action must be regarded as equivalent to a formal entry of judgment, and that if for any reason the record fails to show a judgment rendered by both justices, a defect nowhere alleged in the petition, the proper remedy is an amendment of the record, not the granting of a new trial. Indeed, even if there had never been any announcement of decision on the plea in abatement, we do not see how the prisoner could be entitled to a new trial on that account after having pleaded not guilty and gone to trial without objecting on that account, for he could not have been prejudiced in his trial to the jury by the non action of the court; and, unless the plea of not guilty would amount to a waiver of the plea in abatement, there would be nothing to prevent the court from now giving judgment overruling the latter plea, and thereupon, in the absence of any other objection, proceeding to sentence.

The second ground assigned for a new trial is, that one of the petit jurors who tried the indictment was related by consanguinity in the sixth degree to Wilcox, the person alleged to have been murdered, and that the prisoner was ignorant of the fact and had no opportunity to ascertain it in time to challenge him. The relationship is admitted, but the juror makes affidavit that he did not know of it until after the trial. The prisoner produces three counter affidavits. The affiant in one of them states that he had a conversation with the juror about three months before the trial in which the juror said that Wilcox was a relative of his, expressed a good deal of feeling, and declared that in his opinion the shooting was a deliberate and wilful murder. Another affiant testifies to a conversation which he says occurred two or three months before the trial in which he says the juror and several other persons took part, and in which the relationship was asserted and discussed. He does not recollect, however, that the juror, though he heard the conversation, said anything himself about the relationship. He also says that the juror then said that if the prisoner had killed Wilcox he should be hung. A third

affiant testifies that he saw the juror as he came from the cars on his return from the trial and spoke to him, and that the juror said, " I suppose I am a relative of Wilcox, but it is so far off I don't count it as anything."

This testimony is directly and fully contradicted by a second affidavit of the juror, and in part by affidavits of other witnesses produced in rebuttal by the State. Several affidavits are also introduced by the State given by near relatives and intimate friends of the juror, which go to show that before the trial he knew nothing of the relationship, and had no particular feeling in regard to the homicide. There is no evidence whatever that there was ever any acquaintance or intimacy between the juror and Wilcox or between their families.

The relationship between the juror and Wilcox is so remote that, in the absence of any acquaintance between them, it would not be likely to affect the juror very much even if it were known, and, of course, if it was not known it could not affect him at all. We think the testimony going to show that the juror knew of the relationship is, in view of the contradictory testimony, to say the least, not very trustworthy. Two of the affidavits going to show this knowledge relate to conversations which occurred two or three months before the trial, when the affiants, for anything that appears, had no special reason for remembering them. One affidavit relates to a conversation in which the affiant says several persons took part, but he does not mention their names, and his is the only affidavit relating to it produced. The affidavit to what the juror said on his return from the trial is contradicted not only by the juror, but likewise by the wife of the juror and a third witness.

A petition for new trial on the ground that one of the jurors who tried the cause was disqualified by relationship is not granted as of course, but is addressed to the discretion of the court. " A new trial will not be granted in a criminal case," says the Supreme Court of West Virginia, in a case similar to the case at bar, adopting the language of a marginal note of a prior case, " for matter that is a principal cause of challenge to a juror, which existed before he was elected and sworn as such juror, but which was unknown to the prisoner until after the verdict, and

which could not have been discovered before the juror was so
sworn by the exercise of ordinary diligence; unless it appears
from the whole case that the prisoner suffered injustice from the
fact that such juror sat upon the case." *State* v. *Williams*, 14
W. Va. 851, 869 ; *State* v. *McDonald*, 9 W. Va. 456 ; *McDonald*
v. *Beall*, 55 Ga. 288, 293. The law may be put rather strongly
in this quotation, but, however that may be, we do not think we
ought to grant a new trial simply on account of the relationship,
in view of the fact that the relationship was so remote, and that
the juror himself swears that he was ignorant of it and is corrobo-
rated in so swearing, without some more convincing counter evi-
dence than we have, and without some better reason than we
have for thinking that the prisoner suffered an actual injury from
the presence of the juror on the panel. The prisoner was in-
dicted for murder and convicted of manslaughter only. For any-
thing that appears in this proceeding the evidence may have been
such as to have proved his guilt beyond the shadow of a doubt.
We may certainly assume, in the absence of any petition for a
new trial on the ground that the verdict was against the evidence
or the weight of it, that there was no lack of evidence to support
the verdict.

The third ground for a new trial is, that a view of the place of
the homicide was taken by the jury in the course of the trial, and
that the prisoner was not permitted to accompany the jury and
was not present when it was taken, and that a number of wit-
nesses who had testified were present, gave evidence, conversed
with the jury, pointed out and explained various localities, dis-
tances, and objects, and stated that they were the identical locali-
ties, distances, and objects mentioned in the evidence previously
given.

We think the affidavits show that the view was granted at the
request of the counsel for the prisoner after the government had
put in its testimony in chief and rested. We think the affidavits
also show that the prisoner did not ask to be permitted to go on
the view; and that he made no objection either then or afterwards
during the trial because he did not go. A reporter who was pres-
ent at the trial, whose occupation would naturally lead him to
note and remember the incidents of it, makes affidavit that the

court spoke to one of the counsel for the prisoner in regard to what was to be done with him, and that the counsel replied that his health was such that it would not be prudent for him to go with the jury on such a severe day. We think that under these circumstances the prisoner must be held to have waived his privilege, which, in our opinion, it was competent for him to do. *State v. Adams,* 20 Kans. 311, 323; *United States v. Sacramento,* 2 Montana, 239, 241; *People v. Murray,* 5 Crim. Law Mag. 233; *State v. Polson,* 29 Iowa, 133; *Carroll v. The State,* 5 Neb. 31; *Hill v. The State,* 17 Wisc. 697; *Fight v. The State,* 7 Ohio, 180; *McCorkle v. The State,* 14 Ind. 39. The complaint that witnesses were permitted to testify, &c., is supported only by the affidavit of one of the counsel for the prisoner. We cannot help thinking that the counsel has unconsciously permitted his memory, after the lapse of many weeks, to become colored by his interest for his client, for it is incredible, if the view was abused, as his affidavit would give the impression that it was, that he would not then and there, or at least immediately after the trial was resumed, have loudly complained of the abuse, and called down on the offending prosecution the condemnation of the court. We think the affidavits of Justices Stiness and Tillinghast, who both accompanied the jury on the view, can be more safely trusted. They both make affidavit that no evidence was given to the jury during the view, and that no statements were made to them concerning the cause, except that localities were pointed out for the jury to see which had been referred to in the testimony. According to their testimony, therefore, the view was conducted as views are conducted when they are conducted in the most unexceptionable manner, and the prisoner, having asked for it himself, can have no ground of complaint in regard to it.

We do not think the prisoner makes out such a case as ought to prevail with us, in the exercise of a sound judicial discretion, to grant him a new trial. A new trial is therefore denied and the petition dismissed.

*Samuel P. Colt,* Attorney General, for plaintiff.

*Willard Sayles & Adoniram J. Cushing,* for defendant.