PETITION OF JOHN SCAMPORRINO FOR WRIT OF HABEAS CORPUS.

JULY 13, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Probation Officer. Control over Offender. Habeas Corpus.*

In exercising its authority under the system of probation of offenders, much must be left to the judgment of the court; and an offender, though placed in the custody of the probation officer, continues to be subject to the authority and direction of the court, the officer being its instrument.

In this view of the statute, the court will not consider a petition for *habeas corpus*, based upon the manner in which the probation officer has exercised his control, until after an application has been made to the criminal court asking for a regulation of the officer's conduct.

(2) *Probation Officer. Right to Restrain Offender in Institution.*

A probation officer has power, under Gen. Laws, 1909, cap. 352, § 1, to place a female respondent in a reformatory institution, when he acts with the sanction of the court having the direction of such respondent; and he may detain her in such institution, subject to its reasonable rules, even though such control amounts to a restraint of respondent's liberty.

HABEAS CORPUS.    Heard on petition for writ, and denied.

SWEETLAND, J.  John Scamporrino, husband of Mary Scamporrino, in behalf of said Mary prays that a writ of *habeas corpus* issue against Margaret Dennehy, commanding her to have the body of said Mary before this court and to show cause for imprisoning and restraining said Mary.

On May 10th, 1910, Mary Scamporrino was arrested upon a warrant issued upon a complaint, made to a justice of the District Court of the Sixth Judicial District, charging her, under the name of Mary Sharkey, alias Mary Black, with being a common night walker.  Upon arraignment before said court she pleaded guilty, and the complaint was continued to September 30th, 1910, for sentence.  Thereupon said court, under the power conferred by Gen. Laws (1909), cap. 351, § 7, placed the said Mary Scamporrino under the control and supervision of Margaret Dennehy, an assistant to the State probation officer.  Mrs. Dennehy, under the authority given to

her, as she claims, by Gen. Laws (1909), cap. 352, § 1, and, as far as appears, with the sanction of said District Court, placed said Mary Scamporrino in The House of the Good Shepherd, a reformatory institution, in Providence, established and maintained by a corporation duly created under the laws of the State.

Gen. Laws (1909), cap. 352, § 1, is as follows: "The state probation officer, in the case of any female committed to his custody either by the court or under the authority of section two of this chapter, may provide for the care and maintenance of such female, apart from her family, whenever in his opinion the moral improvement and welfare of such female will be promoted thereby, and such care and maintenance shall be for such period as said officer shall deem advisable and shall be paid for by the state at a rate not exceeding two dollars per week for each female: *Provided,* that every female for whom such provision of care and maintenance is made shall at all times be under the control of said officer, and any such female who has been committed to his care by any court shall continue to be subject to the authority and direction of such court."

The petitioner alleges that Margaret Dennehy is restraining said Mary Scamporrino of her liberty by confining her in the premises of The House of the Good Shepherd; and that Margaret Dennehy and the agents and officers of said corporation actually imprison the said Mary, compelling her to work and labor, and preventing her from having any liberty and also from seeing her husband. The petitioner claims that said chapter 352, section 1, does not empower the probation officer to exercise her custody and control in such manner. The superintendent of The House of the Good Shepherd has made affidavit that the said Mary is not prevented from seeing her husband, and it was not contended before us, at the hearing, that the said Mary is not permitted to see her husband or other proper persons at such times and under such circumstances as is consistent with the good order and discipline of said institution. Except as it is alleged in the petition that the said Mary is compelled to

work and labor, and that she is prevented from "having any liberty," nothing has been presented to us showing the nature of the restraint placed upon her. We are not informed as to the amount of work or labor that she is compelled to perform, or as to the means employed in preventing her from having any liberty. No attempt has been made to show that her treatment is harsh or cruel, or, if she lawfully can be restrained of her liberty by the probation officer in such an institution, that the nature of her restraint is not perfectly reasonable and proper.

The whole scheme of probation provides for a departure from ordinary criminal procedure in those cases, which in the judgment of the court, are suited to its employment. It is clearly the purpose of the statute to confer upon our criminal courts an authority, in the nature of a paternal control, over persons charged with crime and those who have been convicted. In the cases of persons convicted, who are given the benefit of the system of probation, the court is to exercise its authority in such a way as shall best protect the offenders from further temptation and shall best promote their moral reform. Of necessity much must be left to the judgment of the criminal court, and such we find to be the intent of the statute. The respondent, though placed in the custody of the probation officer, continues to be subject to the authority and direction of the court. The probation officer is but the instrument of the court in carrying out its beneficent purposes.

In this view of the statute relating to the probation of respondents in criminal cases, this court will not consider a petition for a writ of *habeas corpus*, preferred against a probation officer and based upon the manner in which such officer has exercised his control over a respondent placed in his custody by a criminal court, until after an application has been made to that court asking for a regulation of the probation officer's conduct. The proper administration of the probation law requires that an opportunity should be given to the criminal courts to direct their own officers before this court will interfere with the action of such officers.

(2)     Furthermore, as to the main question which has been argued before us, we are of the opinion that it is within the power of the probation officer, under Gen. Laws (1909), cap. 352, § 1, to place a female respondent, committed to her care, in an institution, such as The House of the Good Shepherd, when the officer so acts with the sanction of the court having the direction of the respondent.   The probation officer, in the exercise of her control over the respondent, provided by chapter 352, section 1, may detain the respondent in such an institution, subject to the reasonable rules of the institution.   She may so control the respondent, even though her control amounts to a restraint of the respondent's liberty.   The rules of such institution should not lead to a restraint which is cruel or unduly oppressive.   They should be such reasonable restrictions as remove the respondent from temptation and aid in her reformation.   The nature of the probation officer's control is proper when it tends to restore the respondent's moral stamina and to fit her for final discharge from the paternal oversight of the court.   This is the aim of the system of probation, and should not be lost sight of.   No suggestion has been made that the control which Mrs. Dennehy is exercising over this respondent does not naturally tend towards that desirable result.

Petition for a writ of *habeas corpus* is denied and dismissed.

*James A. Williams*, for petitioner.

*Henry W. Greenough, Assistant Attorney General*, for the State.