Severino Di Sandro p. a. *vs.* Providence Gas Co.

JANUARY 8, 1918.

Present: Parkhurst, C. J., Sweetland, Vincent, and Baker, JJ.

(*1*)  *Negligence.  Res Ipsa Loquitur.*

Assuming the doctrine of *res ipsa loquitur* to apply to a personal injury action, a charge to the jury cannot be regarded as adequate where attention is not called to the particular circumstances from which the liability of the defendant might be inferred.

(*2*)  *Negligence.  Res Ipsa Loquitur.  Escape of Gas.*

While a gas company is required to exercise care in laying and maintaining its pipes in the streets commensurate with the proper handling and control of the dangerous instrumentality in which it deals, including the guarding of the pipes when streets are opened by municipal corporations and by due diligence in guarding against injurious consequences arising from leaks and other defects, when discovered, it is not an insurer, for with the proper exercise of all these precautions leakages of gas may occur from an unlooked for cause without fault on the part of the company, and the mere proof that a leak of gas existed or that an explosion occurred is not of itself sufficient to establish liability and the rule of *res ipsa loquitur* does not apply.

(*3*)  *Negligence.  Res Ipsa Loquitur.  Escape of Gas.*

In a personal injury action caused by an explosion of illuminating gas, the escape of gas was evidence for the jury to consider upon the question of negligence; its weight or force was for them to determine in connection with any other evidence in the case pertinent to that question.

(*4*)  *Procedure.  Charge to Jury.  Reversible Error.*

An instruction which implies the existence of facts of which there is no evidence, or which have not been proved, is calculated to mislead the jury and is reversible error.

Trespass on the case for negligence.  Heard on exceptions of plaintiff and sustained.

Baker, J.  The plaintiff, a minor, brought this action by his father, Dionidio Di Sandro, as next friend, against the defendant corporation to recover damages for injuries alleged to have been received by reason of defendant's negligence.

The case was tried in the Superior Court before a justice sitting with a jury in December, 1916, resulting in a verdict in favor of the plaintiff for $1,500. At the conclusion of the testimony the defendant moved for the direction of a verdict in its favor, which motion was denied and to which denial the defendant excepted. It also excepted to two specified portions of the court's charge to the jury, and the case is before this court on these three exceptions.

The declaration contains three counts. In the first count the plaintiff alleges that on the 27th day of March, 1913, he resided in a house on Marietta street in the city of Providence; that the defendant corporation furnished illuminating gas to said premises by gas pipes connected in the cellar with the main pipes in said street; that it was the duty of the defendant to keep in repair and safety said pipes, approaches and connections thereto so that the gas passing through them would not explode or leak or burst forth from the same; that the defendant, unmindful of its duty, permitted some defect in the pipes, the approaches or connections thereto to arise or happen, which defect was unknown to the plaintiff and of which he had no means of knowledge, but which the defendant knew, or but for the want of reasonable care and diligence would have known, whereby the said gas on the day and year aforesaid did explode and injure the plaintiff.

The second count says it was the duty of the defendant to so control and manage the flow of gas that it would enter said pipes and be communicated to the said premises safely and without danger to its occupants; that the defendant permitted some defect to arise in the flow of said gas of which defect the plaintiff was ignorant, but which the defendant knew or ought to have known, whereby the gas exploded and injured the plaintiff.

The third count alleges that the city of Providence had for some time prior to said March 27th been laying sewer

pipes along Marietta street in the vicinity of the main pipes belonging to the defendant; that it was then and there the duty of the defendant " to properly guard its said main pipes on said street so that the dirt which was necessarily dug in the laying of the said sewer pipes would be properly put back in its place and not be so replaced as to cause any damage or injury to the gas pipes " of the defendant; that the defendant was unmindful of this duty and " negligently permitted the said dirt to be so placed and so improperly packed when put back that the same caused the main gas pipe to become defective, whereby the gas running through said gas pipes did on the day and year aforesaid leak out from said gas pipe and explode and thus grievously injure the said plaintiff."

The evidence disclosed among other things these facts: the plaintiff was eighteen years old at the time of the accident; in March, 1913, he resided in the second story of the house numbered 11 on said Marietta street with a family named Sylvester and was working as a carpenter; on the afternoon of March 27 he left his work to go home at half-past four, had his supper, then went out and returned to the house at half past five or six o'clock, at which time he first noticed the smell of gas in the street when five or six feet from the house; thinks the gas came from a hole five or six inches in diameter right side of the street and about five feet from the house; in answer to the question, " How deep was it? " he replied, " Well, of course I didn't measure "; he entered the house downstairs and told the occupants about smelling the gas, and they talked about it; afterwards, at about half-past eight, as plaintiff states, he took a lamp and with others went into the cellar where no leak was discovered, although he, while in the cellar, as some of them with him say, shut off one of the gas meters there; he returned upstairs, placed the lamp on the kitchen table, and they all sat around the table and talked about different things.

After a time, not much after nine o'clock at the latest, two men, Michael and Thomas Sylvester, came to the house, noticed the odor of gas, brought a lamp from the barn in the rear of the house and lighted it and with it entered the cellar. Immediately there was a violent explosion which badly damaged the house. The plaintiff suffered no direct physical injury, but was greatly frightened. He at once ran from the house, says he saw a second explosion right in front of him which was followed by flames, and thinks the flames came from the hole he had seen when he came home. No other witness testified to a second explosion. Other occupants of the house testified as to the smell of gas (although no one of them claimed to observe it earlier than half-past seven o'clock), the visit to the cellar, the explosion and that they saw a blaze in the street not far from the house. Three of them also testified to seeing, late on March 27, a depression or hole in the street near the house, but the testimony was not very definite on the part of any witness as to the location of such depression, one saying that " it rained so much that it made a hole near the house there and the water was going into that hole," but expressed her inability to state more exactly where it was. The other two, who were respectively brother and sister of the plaintiff, say it was " in the street near the house," one of them also adding " opposite the house." The same thing is true as to the location of the flame or blaze in the street after the explosion. Eight persons in addition to the plaintiff testify to seeing the flame or blaze in the street, three of them stating their inability to say where it was in the street. The plaintiff's brother and sister say the flames came from the hole they had previously seen. Angelina Sylvester says it was ten or eleven feet from the house " not just in front, but side." Thomas Sylvester says the flame was " just by the outside of the paving stones of the gutter," " what they call driveway, where the teams can come through." Vin-

cenza Siravo, who lived opposite, says the blaze was " right in the middle of the street "; that the blaze " was there until midnight or after." On March 27 it had rained hard most of the day, but it did not rain in the evening prior to or at the time of the explosion.

The evidence particularly relating to the third count showed that from January 20, 1913, to February 6 of the same year, on which last date the sewer was accepted as completed, the city of Providence was engaged in laying a sewer in the middle of Marietta street at the depth of about twelve feet. This sewer ran from Charles street to Carnac street, or one block, and it was estimated that there were a dozen houses on Marietta street between Charles and Carnac streets. Lateral trenches, ten or eleven feet deep, were dug from the main trench at intervals and branch sewers laid therein to the curb line of the street in order that the houses on the street might connect with the main sewer. Such a trench was dug for the service of No. 11 Marietta street. This trench was about three feet wide at the surface of the street. At a distance of about four feet from the established curb line, although no curb had been set, and between it and the main sewer in the middle of the street was the gas main of the defendant, which was four inches in diameter and was placed at a depth of about four feet below the surface of the street and was in its general direction parallel with the main sewer. The branch sewer trench running towards No. 11 Marietta street ran across and under the gas main and exposed it to view for the width of this trench. There were similar lateral trenches and branch sewers on both sides of the street; those on the right side alone crossed and exposed the gas main to view in the process of excavation. The service gas pipes to the left side of the street, if any, must have been exposed to view in digging the trench for the main sewer, as this trench was between the gas main and the left side of the street. The gas main is made up by joining

together sections of pipe twelve feet in length. No bell or joint of two such sections was exposed by the digging of the branch trench running to No. 11. The ends of the section of pipe exposed were embedded in the wall of earth on the sides of the trench. The service pipe from the gas main to the house No. 11 Marietta street was not uncovered or visible. The digging of the sewer trenches, the laying of the sewer pipes and the refilling of the trenches were done by a contractor of much experience in such work under the supervision of a civil engineer employed by the city. While the work was in progress the defendant had an experienced inspector present to see that its main and other pipes were not injured and that the dirt was properly replaced about them. All three testify that all the sewer trenches, main and lateral, were properly back-filled, that is that the dirt was puddled and tamped when the trenches were refilled, the lateral trench to No. 11 being a subject of special inquiry. The contractor qualified his testimony to the extent of saying that while he was present most of the time he was not always so, and that the back-filling was properly done while he was there. One or more of them said that the condition of the gas main when it was uncovered was good, both when it was first uncovered and at the time it was covered up; that it took from two to three hours to refill a lateral trench and that the weather was frosty when some of the dirt was put back. The testimony of these three witnesses as to the condition of the gas main when and where it was uncovered and as to how the trenches were refilled with dirt was not contradicted by any witness. While many witnesses were questioned on the point no one of them gave any testimony that the hole and the flame in the street were located where the digging for the sewer and its branches had been carried on except Nicandro Di Sandro, who to this question as to the location of the hole, " Whereabouts with reference to where they put the sewer in? " replied " I don't remember

precisely, right near there." There is no evidence show-
ing just where the escape of gas occurred, whether it was
from the gas main or from the service pipe leading from
the main to No. 11 Marietta street, if from either. From
the testimony the plaintiff appears to have been the first
person who observed the odor of escaping gas on March
27, and there is no evidence that the defendant had any
notice or knowledge of the gas leak before the occurrence
of the explosion.

As to the first exception, which was taken to the re-
fusal of the trial court to direct a verdict in favor of the
defendant, there is an even division of this court so that
the ruling of the trial court stands, and in effect the
exception is overruled. *Wrynn* v. *Downey*, 27 R. I. 454.

The second exception was taken to the part of the
charge to the jury reading as follows: " Coming back
to those two counts and speaking briefly of that doctrine,
and it is difficult to explain it, but it means that where a
given set of facts is presented to any jury or court in
such a way that the reasonable, logical inference is that
those facts couldn't have existed, that the accident
couldn't have occurred without negligence on the part
of the defendant, in such a case as that, the court says
that the affair speaks for itself, that these things don't
happen unless there is negligence, and if there is cir-
cumstantial evidence or other evidence proper to apply
to that proposition, you may say, having in mind all the
testimony ' We are satisfied that there was negligence.'
You must find negligence in every case then, with the
doctrine I speak of." Just before, in the charge, the
court had said: " In the first two counts they par-
ticularly rely on the doctrine which we in the law call by
the Latin phrase *res ipsa loquitur.*" . . .

(1)     The portion of the charge covered by this exception is
practically the whole charge as to liability under the first
two counts. The court implies that the rule of *res ipsa
loquitur* is applicable to the facts of this case. Assuming

that view to be correct, we think the instruction was inadequate, in that the attention of the jury was not called to the particular circumstance or circumstances from which the liability of the defendant might be inferred. If we assume the instruction intended was that the jury might properly infer liability on the part of the defendant, because there was an unexplained leak of gas, it is by no means clear that the jury so understood it.

(2)    But we are of the opinion that the mere fact that gas escaped from a pipe of the defendant corporation is not in the present case of itself sufficient to establish the liability of the company, and therefore, that the rule of *res ipsa loquitur* does not apply. The present case is distinguishable from *Cox* v. *Providence Gas Co.,* 17 R. I. 199, in that the control of its mains and pipes in the street is not complete and exclusive, as was the control of the instrumentality on its own premises in the case cited. In other words, while a gas company is required to exercise care in laying and maintaining its pipes in the streets commensurate with the proper handling and control of the dangerous instrumentality in which it deals, it is not an insurer. It is required carefully to guard against dangers and accidents which can be foreseen as likely to happen by the use of mains and pipes of approved quality, by making all connections in a thorough and workman-like manner, by placing the pipes in the ground at such depth that they will not be disturbed or broken by the frost, by a careful system of inspection for the prompt discovery of defects, by the guarding of its pipes when streets are opened by municipal or other corporations, and by due diligence in guarding against injurious consequences arising from leaks and other defects when discovered. A disregard of any of these requirements may afford evidence of negligence in the circumstances of a particular case. It is obvious, however, because its pipes are buried out of sight in public highways that with the proper exercise of all these precau-

tions, leakages of gas *may* occur from an unlooked for cause without fault on the part of a gas company. Cases holding that mere proof that a leak of gas existed or that an explosion occurred is not of itself sufficient to establish liability on the part of a gas company, in other words, that the rule of *res ipsa loquitur* does not apply, are cited in a note to *Dowler* v. *Citizens Gas & Oil Co.,* in Vol. 33, American and English Annotated Cases at page 356 under the title, Sufficiency of Evidence. See also, 12 R. C. L. 912, section 52. The Supreme Court of Minnesota has held that the rule referred to is applicable in such cases. See *Gould* v. *Winona Gas Co.,* 100 Minn. 258; *Manning* v. *St. Paul Gaslight Co.,* 129 Minn. 55. In both cases, however, the court calls attention to other evidence from which negligence might properly have been inferred apart from or in connection with the fact of the escape of gas.

(3) In the submission of the present case to the jury the escape of gas was evidence for them to consider upon the question of negligence; its weight or force was for them to determine in connection with any other evidence in the case pertinent to that question, if such there be. *Carmody* v. *Boston Gaslight Co.,* 162 Mass. 539.

For the reasons already stated we are of the opinion that the portion of the charge now under consideration is not only inadequate as a full and clear statement of the rule the court had in mind, but also that the rule is not applicable in the present case. The second exception is therefore sustained.

The third exception was taken to the portion of the charge which reads as follows: " The mere fact of the explosion in itself doesn't entitle the plaintiff to recover. If, however, in connection with the explosion, you find surrounding facts which would warrant you honestly and fairly in saying, by the burden that I told you is required, that this ditch was improperly filled in and that the pipe sagged or broke from that cause and the gas

escaped into that house and the accident happened as a result of its pouring into the house — having in mind all the testimony — in that case there would be negligence on the part of the defendant company, provided the plaintiff suffered any injury.'' This language is calculated to produce the impression upon the jury that upon the evidence in the case they could fairly find that '' this ditch '' (presumably the trench running towards No. 11 is meant) '' was improperly filled in and that the pipe '' (main) '' sagged or broke from that cause and the gas escaped into that house '' in consequence. We think this was error. There is no evidence that the dirt was improperly (4) filled in or that the gas main sagged or broke from that or any cause. An instruction which implies the existence of facts, of which there is no evidence or which have not been proved is calculated to mislead the jury and is reversible error. Bashfield Instructions to Juries, Vol. I, p. 256; Thompson's Trials, Vol. II, p. 1552; 14 R. C. L. Instructions, Secs. 43 and 44; *Indiana, etc. Traction Co.* v. *Reynolds,* 176 Ind. 263, 267; *Warrington* v. *Bird,* 168 Mo. App. 385.

The plaintiff relies largely on *Butcher* v. *Providence Gas Co.,* 12 R. I. 149. In that case, however, it was admitted by the defendant that the servants of the city had not packed back the dirt properly and that in consequence the defendant's pipe broke. In the present case there is no evidence that the trench was not properly refilled or that the gas main broke. The distinction between the two cases is obvious. In the present case, while the fact of the leak is beyond question, it is a matter of conjecture where it was located. Neither party attempted to show where the leak was found to be. From the short time between the first discovery of escaping gas and the explosion — about three hours — and the fact that in that time such an amount of gas forced its way into the cellar of No. 11, it seems quite as natural to conjecture that the break was in the service

pipe running from the main to No. 11 as that it was in the main at the point where the lateral sewer trench to No. 11 had been dug. It is, however, a conjecture in either case. It is possible that at a new trial the location and cause of the leak will be made evident.

We call attention to an objectionable feature of the brief for the plaintiff. No less than seven purported quotations from as many cited cases are inaccurate. Some of them are of the nature of paraphrases, although in quotation marks, and in two cases a syllabus is quoted as if it were part of the opinion, in one case with slight alteration. Such a practice cannot be tolerated. Such briefs are calculated to annoy even if they otherwise assist. They should be prepared with care and accuracy.

The second and third of the defendant's exceptions are sustained, and the case is remitted to the Superior Court for a new trial.

*Anthony V. Pettine, Pettine & DePasquale,* **for** plaintiff.

*Harold W. Thatcher, Frank H. Swan, Swan & Keeney,* for defendant.

