**374 A.2d 778.**

STATE *vs.* ARAM K. BERBERIAN.

JUNE 20, 1977.

PRESENT: Bevilacqua, C. J., Paolino. Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C. J. This petition for a writ of habeas corpus is predicated on the petitioner's assertion that his prospective incarceration at the Adult Correctional Institutions is unlawful because the participation by a partially deaf juror on the panel which convicted him denied

him the rights guaranteed by the sixth amendment of the United States Constitution and art. I, §10 of the Rhode Island Constitution.[1]

The petitioner was found guilty of reckless driving in violation of G.L. 1956 (1968 Reenactment) §31-27-4 after a jury trial in Superior Court.

In the course of polling the jury, it appeared that the hearing of one of the jurors was impaired. The trial justice then conducted an examination of this juror to determine whether his hearing was so defective that he could not fully understand the proceedings. Counsel for both sides were permitted to participate. At the conclusion of the examination, petitioner moved to have the case passed, or an alternate juror substituted for the partially deaf juror. The trial justice denied the motion and petitioner appealed his conviction. On appeal, this court was evenly divided on the issue of whether the juror's hearing was impaired to the point that he could not properly discharge his duty. *State* v. *Berberian*, 113 R.I. 521, 324 A.2d 330 (1974).[2] Accordingly, the decision of the Superior Court was affirmed.

It is the state's contention that the issues raised by the instant petition, having been heard on appeal, are res judicata, and therefore petitioner is barred from relitigating the issue. The state in so arguing misconstrues the effect given to a decision of an evenly divided court and the nature of a petition for habeas corpus. When this court is evenly divided, the judgment or decree of the trial court stands, *Spooner* v. *Powers & Mayer Mfg. Corp.*, 110 A. 401 (R.I. 1920); *Di Sandro* v. *Providence*

---

[1] As a result of the disposition of this issue, we do not reach the other issues raised by the petitioner on appeal from the denial of his motion to reduce sentence pursuant to Super. R. Crim. P. 35.

[2] This court in *State* v. *Berberian,* 113 R.I. 521, 324 A.2d 330 (1974), resolved all other issues raised by the defendant against him.

*Gas Co.*, 40 R.I. 551, 102 A. 617 (1918), and there is no authoritative decision of the question of law involved. *Wrynn* v. *Downey*, 27 R.I. 454, 63 A. 401 (1906). Furthermore, the doctrine or res judicata is inapplicable to habeas corpus proceedings; the issuance of the writ is within the discretion of the court. 39 C.J.S. *Habeas Corpus* §§10, 17 (1976). See *Darr* v. *Burford*, 339 U.S. 200, 204, 214-15, 70 S.Ct. 587, 590, 596, 94 L.Ed. 761, 767, 772-73 (1950); *Salinger* v. *Loisel*, 265 U.S. 224, 230-31, 44 St.Ct. 519, 521, 68 L.Ed. 989, 995-96 (1924).

Ordinarily an application for habeas corpus will be entertained only after all other available remedies have been exhausted, and in the instant case, this requirement has been met. *Cf. Reynolds* v. *Langlois*, 99 R.I. 555, 209 A.2d 237 (1965) (application for habeas corpus denied where the petitioner intentionally bypassed state procedure by failing to prosecute an appeal); *In re Scamporrino*, 30 R.I. 587, 76 A. 761 (1910) (petition for habeas corpus denied until after application to criminal court asking for a regulation of the probation officer's conduct). Therefore, since the denial of a constitutional right is alleged and the issue was not decided authoritatively in the prior appeal, this court, acting within its discretion, and consistent with its obligation under the constitutions of this state and of the United States, to preserve and secure the right of every person to due process, will reach the merits of the instant petition.

The state further contends that petitioner's failure to challenge the juror's physical qualifications until after the verdict constituted a waiver of his right to such an objection. It is generally held that a party who knows or by the exercise of reasonable diligence on the voir dire examination should have known of a juror's disqualification waives the right to object thereto by waiting to raise the objection until after the verdict. 47 Am. Jur. 2d *Jury*

§109 (1969). *See King* v. *Leach,* 131 F.2d 8 (5th Cir. 1942); *Commonwealth* v. *Brown,* 231 Pa. Super. 431, 332 A.2d 828 (1974); *Industrial Trust Co.* v. *Feuer,* 57 R.I. 243, 189 A. 42 (1937); *Fiske* v. *Paine,* 18 R.I. 632, 28 A. 1026 (1894); *Lindsey* v. *State,* 189 Tenn. 355, 225 S.W.2d 533 (1949). However, in the instant case, we find nothing in the record to indicate that petitioner through the exercise of reasonable diligence could have discovered that the juror in question had a hearing impediment. Additionally, in determining that petitioner has not waived his objection even though raised after the verdict, we find the reasoning of the court in *Black* v. *Continental Cas. Co.,* 9 S.W.2d 743, 744 (Tex. Civ. App. 1928) persuasive:

> "Obviously a juror whose vision or hearing is so defective that he cannot hear material testimony, or see the conduct of the witness on the stand, cannot as an impartial juror pass upon the credibility of the witness or the weight to be given his testimony, nor render a fair and impartial verdict solely on the evidence. And, if said juror's disqualification is not discovered prior to the verdict, through no negligence of the complaining party, it is likewise obvious that injury to his rights may result; and whether the matter of public policy in refusing to consider such disqualification after a verdict has been reached should outweigh an injury done a litigant because of such disqualification may be open to doubt."

Since there appears to have been no negligence on the part of petitioner in failing to discover the juror's hearing impairment prior to the verdict and in view of the substantiality of the rights involved, we find that petitioner did not waive his objection.

Article I, §10 of the Rhode Island Constitution[3] and the

---

[3] In *Opinion to the Senate,* 108 R.I. 628, 278 A.2d 852 (1971), this court held that an act reducing the number of jurors on a jury would violate the Rhode Island Constitution. The court reasoned that the provision of art. I, §15 providing that the right to a jury trial was to remain inviolate

418

sixth amendment of the United States Constitution guarantee to the criminally accused the right to a trial by jury, that is, " 'a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process.' " *State* v. *Pella,* 101 R.I. 62, 64, 220 A.2d 226, 228 (1966), citing *Irvin* v. *Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 755 (1961). Fundamental to the right of an "impartial" jury is the requirement that jurors be competent and qualified. "[T]rial by jury necessarily requires a jury which is able to comprehend and intelligently resolve the factual issues submitted to its verdict." *Rabinowitz* v. *United States,* 366 F.2d 34 (5th Cir. 1966). (Coleman, J. concurring in part and dissenting in part). It follows that a juror should be free from physical disabilities that would interfere with the proper discharge of his duties. *Commonwealth* v. *Brown, supra;* 47 Am. Jur. 2d *Jury* §109 (1969); ABA Project on Standards for Criminal Justice, *Standards Relating to Trial by Jury* §2.1 (b)·(ii) (Approved Draft, 1968).

It is generally held that the issue of whether a physical infirmity, such as deafness, is sufficient to disqualify a juror is a question addressed to the sound discretion of the trial

---

was "a guarantee that there would be no changes in the 'essential features' of a jury trial as they were derived from 'our ancestors' and now exist by force of the 'common law' as a political right." *Id.* at 640, 278 A.2d at 858. At common law there were three attributes which distinguished a jury: (1) the jury was composed of twelve individuals; (2) the jury was required to be impartial; (3) the jury's verdict had to be unanimous. *Id.* at 637, 278 A.2d at 857. In this same opinion, the court, tracing the history of jury trials in Rhode Island, noted that the legislation relative to juries, enacted pursuant to the Royal Charter of 1663, provided for a jury of "twelve *able* jury men." *Id.* at 636, 278 A.2d at 856. (Emphasis added.) Thus, the competence of jurors was a recognized attribute of the common law jury. Applying the reasoning we utilized in *Opinion to the Senate, supra,* we conclude that one of the inherent aspects of the right to trial by jury is the right to be tried by competent jurors.

justice, and such decision will not be disturbed except where an abuse of discretion is shown. *Lyda* v. *United States,* 321 F.2d 788 (9th Cir. 1963); *King* v. *Leach, supra; Lindsey* v. *State, supra.* While this court has not previously reviewed a case involving the issue of a juror's physical competence, it is well-settled in this jurisdiction that the issue of whether a juror is disqualified due to bias, prejudice or interest is left to the discretion of the trial justice. *Industrial Trust Co.* v. *Feuer, supra; Sansouver* v. *Glenlyon Dye Works,* 28 R.I. 539, 69 A. 545 (1908); *Fiske* v. *Paine, supra; State* v. *Congdon,* 14 R.I. 458 (1884). In *Fiske* v. *Paine, supra,* this court rejected a distinction between disqualifications *propter defectum,* e.g., alienage, nonresidence, or nontaxpaying, and disqualifications *propter affectum,* e.g., relationship or interest, which impugn the impartiality of a juror. The court stated that all types of juror disqualification should be treated in a similar manner:

> "The court should consider whether the right of a party to a fair and impartial trial has been prejudiced, and decide accordingly, whether the alleged disqualification be *propter defectum* or *propter affectum.* \* \* \* The decisive test is the fact of a fair trial." *Id.* at 635-36, 28 A. at 1027.

In the instant case, the trial justice, after examining the juror, decided that although he had a hearing impairment, it was not such as to preclude him from properly discharging his duties as a juror. The petitioner contends that the trial justice, in so concluding, abused his discretion. After carefully reviewing the transcript of the examination of the juror, we agree with petitioner's contention.

During the examination of the juror, he indicated that he had difficulty in hearing. In fact, in a number of instances he openly admitted that he could not hear the

questions submitted to him.[4] Further, a considerable number of his answers during the examination were not responsive. Questions frequently had to be repeated before the juror could respond appropriately. The juror also acknowledged that he was unable to hear defense counsel when said counsel was not facing him.[5]

In this case, we find that the record indicates that the juror in question had a hearing impairment sufficient to deny the petitioner's right to a fair, impartial trial and a unanimous verdict. The juror's own statement that he was able to hear all the testimony in the case cannot be considered persuasive, since he would not necessarily be aware of what he could not hear. Thus, since the juror's

---

[4]"THE COURT: Where were you employed prior to that***. JUROR: Where was I what? THE COURT: Where were you employed prior to that time? JUROR: Employed at that time? THE COURT: Prior. JUROR: I'm sorry, but I was employed the eighteenth of June, 1971. THE COURT: And prior to that employment, where were you employed? JUROR: Where was I born? THE COURT: No, where were you employed? JUROR: I can't hear you, I'm sorry. THE COURT: I see. ***[W]ere you able to hear all of the witnesses as they testified? JUROR:I was quite well, but I've been driving a truck all these years and not obstructing traffic. I can hear you. THE COURT: Have you ever employed a hearing aid of any sort? JUROR: Yes, sir. THE COURT: What kind of a hearing aid have you employed? JUROR: Have I ever been what? The COURT: Have you ever used a hearing aid? ***JUROR: No I never knew I had bad hearing. THE COURT: Do you consider yourself to have normal hearing? JUROR: I believe I am. I'm a bit nervous now because it just happened. but I'm an honest man. That's one thing —."

[5]The following took place during the questioning of the juror by defense counsel:

"Q: To help you understand, do you look at someone's mouth, sir? A: I did. ***Q: In other words, you understand people if they're facing you, is that correct? A: I understand you very well, quite well now. Q: And I'm facing you, is that correct? A: Not only through your face, through your voice. Q: Do you have any problem understanding someone when they're not looking at you? A: I beg your pardon? THE COURT: Say it again. Q: Do you have any problem understanding anyone when they're not looking at you? A: That I couldn't, I can't hear him turned around that way."

deafness may have adversely affected his ability to decide the case intelligently, we must grant the petition for habeas corpus in order to insure a fair trial.

The petition for habeas corpus is hereby granted, the judgment of the Superior Court is quashed, and the case remanded to the Superior Court for further proceedings in accordance with this opinion.

Mr. Justice Kelleher, with whom Mr. Justice Doris joins, dissenting. In speaking of matters that are addressed to the sound discretion of a trial justice, we have said that the trial justice has a "front-row seat" at the trial and can best determine the effect of the incident or remarks which require the exercise of his or her discretion. *State* v. *Marrapese*, 116 R.I. 1, 351 A.2d 95 (1976); *State* v. *Pailin*, 114 R.I. 725, 339 A.2d 253 (1975). As a front-row spectator, the trial justice in the case at bar was especially suited to determine the issue in dispute because he was not only a spectator at the trial, he was also an auditor. Unlike we who sit in the appellate court and some 4 years later look at the cold record, the trial justice was there so that he could watch where the attorneys stood as they interrogated the witnesses and, in a manner of speaking, count the decibels that resounded through the courtroom. Yes, in this case the trial justice could make a physical determination which is beyond our ken.

Having alluded to the trial justice's role, it is appropriate that a brief summary of the evidence be detailed.

Four members of the committing squad testified that at approximately 9:15 a.m. on April 11, 1972, they were participants in a three-vehicle convoy charged with the responsibility of transporting prisoners from the Adult Correctional Institutions in Cranston easterly along U.S. Route 195 to courthouses located in Providence; that the convoy consisted of a lead vehicle, a bus, and a trailing vehicle; that each vehicle exhibited an array of flashing

lights; that the bus carried members of the committing squad and approximately 15 prisoners; that as the convoy approached the Wickenden Street exit in Providence, a station wagon operated by petitioner passed the bus on its right-hand side, and somewhere in the process the wagon broke into the convoy. It took a position between the lead vehicle and the bus. When the driver of the bus attempted to pass the wagon, petitioner would obstruct its path. The petitioner's maneuvering caused the bus to leave the roadway and run onto the curbing that lined the exit ramp.

The petitioner did testify in his own defense. He insisted that the police should have charged the bus driver rather than him as the reckless operator. He told the jury that as the bus began its descent along the ramp, he said to himself: "Good Lord, this guy's out of his mind."

When the inquiry focused on juror No. 7, the juror made it clear to the trial justice that he was "nervous" and "perturbed" at what was transpiring. Such a reaction is quite normal for an individual who is asked to leave his job in a heat-treating plant and come to Superior Court where, after performing his civic duty, he suddenly finds himself thrust in the middle of an inquiry being conducted by a judge and two attorneys. The foreman of the jury put this aspect of the trial in its true focus when he told the trial justice that the post-verdict interrogation was the first indication that he had that his colleague was experiencing a "hearing difficulty." The foreman reported that juror No. 7 took an active part in the deliberations and it was obvious to him that the juror's present difficulty stemmed from the fact that "he's rattled now."

Since I believe the testimonial excerpts footnoted by the majority fail to catch the full flavor of what transpired once the defense began to suspect that juror No. 7 was

suffering from a hearing defect, I have included within this dissent that portion of the trial justice's decision where he reviews the evidence and gives his reasons for denying petitioner's motion. It reads thus:

"I think this is the question to be decided here, that is, was [Juror No. 7's][1] infirmity such as to preclude the proper discharge of his duties? I have examined the transcript of the poll as it involved [him] and the proceedings which followed. This examination, together with my observations of [Juror No. 7] satisfy me that he has a hearing impediment, but that this impediment was not such as to preclude him from properly discharging his duties as a juror in this case. The juror himself said the attorneys and witnesses spoke loudly enough for him to hear. The foreman told the Court he had not detected any hearing difficulty on the part of [Juror No. 7] and that he had no problem in the jury room during the deliberations. The witnesses for the State, all of whom were members of the Committing Squad, spoke clearly and generally with strong voices. The defendant took the stand. His responses to the questions were not only clear, but loud. Except when examining witnesses concerning their statements, counsel conducted their questioning from directly in front of the jury box. Counsel's opening statements, their summations and the Court's charge were all delivered in clear voices. [Juror No. 7] said he may have missed a few words, but that he was capable of doing his duty. I'm satisfied that he was. When he was examined after the verdict, he either did not hear or did not understand some of the Court's questions and some of Mr. Chaika's questions. When we examined him, however, he was obviously nervous and upset. Additionally, Mr. Chaika questioned him from the center of the courtroom, and at one time with his head turned away from the juror. Both of

---

[1]In deference to the identity of the juror, where the trial justice referred to him by name, I have used brackets and the phrase "Juror No. 7" or the appropriate pronoun.

us, in an effort to test [his] hearing, addressed the juror in conversational, if not muted, voices. A juror with normal hearing might have had difficulty understanding us in a courtroom the size of Room No. 5. Mr. Tracy, Juror No. 11, told the Court that he was seated next to [Juror No. 7] in the jury lounge on the fourth floor and that [Juror No. 7] asked him, Mr. Tracy, to tell him when his name was called. We have no way of knowing if [Juror No. 7] made the request before the Sheriff spoke, while he was speaking or how loudly the Sheriff spoke.

"On the whole, I'm satisfied that [Juror No. 7], despite the fact that he has some hearing impediment, was physically qualified to act as a juror in this case. The defendant's right to a verdict returned by 12 competent jurors has not been infringed."

It is obvious that the degree of auditory acuity varies from person to person, and its extent is dependent upon a number of factors, including age, the acoustical setting where the conversation takes place, and the amount of volume generated by the speakers. A jury verdict should not be impeached simply because a juror has a hearing defect. Before such an event should take place, there must be proof that the juror could not make an intelligent decision because the impairment was of such a magnitude that he or she was unable to hear the material evidence, arguments of counsel, and the trial justice's instructions. *Commonwealth* v. *Brown*, 231 Pa. Super. 431, 332 A.2d 828 (1974; Annot., 15 A.L.R.2d 534 (1951). Here the trial justice, who looking and listening from his front-row seat, has ruled that juror No. 7 properly discharged his duties, and on this record I cannot fault his decision, especially in the light of his findings that the post-verdict inquiry was not performed with the clarity or volume of speech that he had observed during the course of the trial.

*Julius C. Michaelson,* Attorney General, *Forrest Avila,* Special Asst. Attorney General, for plaintiff-respondent.

*Aram K. Berberian,* pro se, defendant-petitioner.