## SNYDER *v.* MASSACHUSETTS.

No. 241. Argued November 7, 1933.—Decided January 8, 1934.

98

*Mr. A. C. Webber*, with whom *Messrs. Henry P. Fielding* and *L. H. Weinstein* were on the brief, for petitioner.

*Mr. Joseph E. Warner,* Attorney General of Massachusetts, with whom *Mr. George B. Lourie,* Assistant Attorney General, and *Mr. Frank G. Volpe* were on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

On April 9, 1931, James M. Kiley was shot to death at a gasoline station at Somerville, Massachusetts. Three men, Garrick, Donnellon and the petitioner Snyder, joined in the murder and in the attempted robbery that led to it. Garrick confessed to his part in the crime and became a witness for the state. Donnellon and Snyder were tried together and sentenced to be put to death. The jury found upon abundant evidence that the guilt of each had.

been established beyond a reasonable doubt. At the trial and on appeal Snyder made the claim that through the refusal of the trial judge to permit him to be present at a view there had been a denial of due process of law under the Fourteenth Amendment of the Constitution of the United States. The Supreme Judicial Court of Massachusetts affirmed the conviction. 282 Mass. 401; 185 N.E. 376. A writ of certiorari brings the case here.

At the opening of the trial there was a motion by the Commonwealth that the jury be directed to view the scene of the crime. This motion was granted. In granting it the court acted under a Massachusetts statute which provides " The court may order a view by a jury impanelled to try a criminal case." General Laws of Massachusetts, c. 234, § 35. The court appointed counsel for Donnellon and for Snyder to represent their respective clients at the place to be viewed. Counsel for Donnellon moved that he be permitted to go there with his client after the view, but did not ask that his client be present with the jury. The court stated that such an order would probably be made. Counsel for Snyder moved that his client be permitted to view the scene with the jury, invoking the protection of the federal constitution. This motion was denied. The jurors were then placed in charge of bailiffs duly sworn. Accompanied by these bailiffs and also by the judge, the court stenographer, the District Attorney and the counsel for the defendants, they went forth to make their view.

The first stopping place was at the filling station, 13 Somerville Avenue. Entering the station, the District Attorney pointed out to the jurors the particular parts of the building that he wished them to observe. He asked them to note the window at the rear, its position with reference to the entrance, the position of other windows to the right, the size of the room, the angle made by a partition, and the location of other objects. Counsel for

Snyder called attention to the view from within the building looking out, and to the condition of the floor. Leaving the station by the front door, the jury viewed the building from the other side of the street. The District Attorney asked that note be made of the driveway to the right and left of the station, the three pumps in front, and also the width of the street. Counsel for Snyder called attention to the nature of the travel, the setback of the station from the roadway, and in particular the possibility of observing from without what was taking place within. After the visit to the station the jurors were taken a short distance away where they were asked to make note of the lay-out of the streets. They then went back to the station, the District Attorney saying that he had omitted to direct their attention to the lights. The lights were then observed, the dimensions of a fence in front of them, and also, once more, the gasoline pumps. The District Attorney stated that the middle pump was not there at the time of the homicide. Counsel for the petitioner answered that he had no knowledge on the subject but would accept his adversary's statement. Thereupon the judge, who had guided the proceeding, stated the agreement to the jurors assembled on the walk. "It is agreed," he said, "that at the time of the offense, that is, on April 9, 1931, there were but two pumps in front of the gasoline station, the one on the extreme right that is painted green, and the one on the extreme left that is painted black. Those two were there. The one in the middle, with the blue striping on it, was not there."

After the completion of the view, the group returned to the court house and the trial went on. In charging the jury the judge said, "Now what have you before you on which to form your judgment and to render your finding and your verdict? The view, the testimony given by the witnesses and the exhibits comprise the evidence that is before you." The question in this court is whether a

view in the absence of a defendant who has made demand that he be present is a denial of due process under the Fourteenth Amendment.

The Commonwealth of Massachusetts is free to regulate the procedure of its courts in accordance with its own conception of policy and fairness unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Twining* v. *New Jersey*, 211 U.S. 78, 106, 111, 112; *Rogers* v. *Peck*, 199 U.S. 425, 434; *Maxwell* v. *Dow*, 176 U.S. 581, 604; *Hurtado* v. *California*, 110 U.S. 516; *Frank* v. *Mangum*, 237 U.S. 309, 326; *Powell* v. *Alabama*, 287 U.S. 45, 67. Its procedure does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar. Consistently with that amendment, trial by jury may be abolished. *Walker* v. *Sauvinet*, 92 U.S. 90; *Maxwell* v. *Dow, supra; N. Y. Central R. Co.* v. *White*, 243 U.S. 188, 208; *Wagner Electric Co.* v. *Lyndon*, 262 U.S. 226, 232. Indictments by a grand jury may give way to informations by a public officer. *Hurtado* v. *California, supra; Gaines* v. *Washington*, 277 U.S. 81, 86. The privilege against self-incrimination may be withdrawn and the accused put upon the stand as a witness for the state. *Twining* v. *New Jersey, supra.* What may not be taken away is notice of the charge and an adequate opportunity to be heard in defense of it. *Twining* v. *New Jersey, supra; Powell* v. *Alabama, supra*, pp. 68, 71; *Holmes* v. *Conway*, 241 U.S. 624. Cf. *Blackmer* v. *United States*, 284 U.S. 421, 440.

We assume in aid of the petitioner that in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend

against the charge. Thus, the privilege to confront one's accusers and cross-examine them face to face is assured to a defendant by the Sixth Amendment in prosecutions in the federal courts (*Gaines* v. *Washington, supra,* at p. 85), and in prosecutions in the state courts is assured very often by the constitutions of the states. For present purposes we assume that the privilege is reinforced by the Fourteenth Amendment, though this has not been squarely held. Cf. *Schwab* v. *Berggren,* 143 U.S. 442, 448, 450; *West* v. *Louisiana,* 194 U.S. 258; *Diaz* v. *United States,* 223 U. S. 442, 455; *Blackmer* v. *United States, supra.* *Hopt* v. *Utah,* 110 U.S. 574, has been distinguished and limited. *Frank* v. *Mangum, supra,* pp. 340, 341. Cf. *Patton* v. *United States,* 281 U.S. 276. Again, defense may be made easier if the accused is permitted to be present at the examination of jurors or the summing up of counsel, for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself. See *Lewis* v. *United States,* 146 U.S. 370, a prosecution in the federal courts. In such circumstances also we make a like assumption as to the scope of the privilege created by the federal constitution. *Diaz* v. *United States, supra.* No doubt the privilege may be lost by consent or at times even by misconduct. *Diaz* v. *United States, supra.* Cf. Sir James Fitzjames Stephen, Digest of the Law of Criminal Procedure, Art. 302. Our concern is with its extension when unmodified by waiver, either actual or imputed.

In all the cases thus assumed the presence of the defendant satisfies the test that was put forward a moment ago as basic and decisive. It bears, or may fairly be assumed to bear, a relation, reasonably substantial, to his opportunity to defend. Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a

shadow. What has been said, if not decided, is distinctly to the contrary. *Howard* v. *Kentucky,* 200 U.S. 164, 175; *Valdez* v. *United States,* 244 U.S. 432, 445. Cf. *Frank* v. *Mangum, supra,* and particularly the dissenting opinion at p. 346. The underlying principle gains point and precision from the distinction everywhere drawn between proceedings at the trial and those before and after. Many motions before trial are heard in the defendant's absence, and many motions after trial or in the prosecution of appeals. Cf. *Schwab* v. *Berggren, supra,* and *Lewis* v. *United States, supra.* Confusion of thought will result if we fail to mark the distinction between requirements in respect of presence that have their source in the common law, and requirements that have their source, either expressly or by implication, in the federal constitution. Confusion will result again if the privilege of presence be identified with the privilege of confrontation, which is limited to the stages of the trial when there are witnesses to be questioned. " It was intended to prevent the conviction of the accused upon depositions or *ex parte* affidavits, and particularly to preserve the right of the accused to test the recollection of the witness in the exercise of the right of cross-examination." *Dowdell* v. *United States,* 221 U.S. 325, 330. See also Wigmore, Evidence, vol. 3, §§ 1395, 1397, collating the decisions. Nor has the privilege of confrontation at any time been without recognized exceptions, as for instance dying declarations or documentary evidence. *Dowdell* v. *United States, supra.* Cf. *Robertson* v. *Baldwin,* 165 U.S. 275, 282; *Motes* v. *United States,* 178 U.S. 458, 472, 473. The exceptions are not even static, but may be enlarged from time to time if there is no material departure from the reason of the general rule. *Commonwealth* v. *Slavski,* 245 Mass. 405, 415; 140 N.E. 465; cf. *West* v. *Louisiana, supra.* So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due

process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.

We are thus brought to an inquiry as to the relation between the defendant's presence at a view and the fundamental justice assured to him by the Constitution of the United States.

At the outset we consider a bare inspection and nothing more, a view where nothing is said by any one to direct the attention of the jury to one feature or another. The Fourteenth Amendment does not assure to a defendant the privilege to be present at such a time. There is nothing he could do if he were there, and almost nothing he could gain. The only shred of advantage would be to make certain that the jury had been brought to the right place and had viewed the right scene. If he felt any doubt about this, he could examine the bailiffs at the trial and learn what they had looked at. The risk that they would lie is no greater than the risk that attaches to testimony about anything. " Constitutional law like other mortal contrivances has to take some chances." *Blinn* v. *Nelson,* 222 U.S. 1, 7. Here the chance is so remote that it dwindles to the vanishing point. If the bailiffs were to bear false witness as to the place they had shown, the lie would be known to the jury. There is no immutable principle of justice that secures protection to a defendant against so shadowy a risk. The argument is made that conceivably the place might have been changed and in a way that would be material. In that event the fact could be brought out by appropriate inquiry. There could be inquiry of witnesses in court and of counsel out of court. Description would disclose the conditions at the view, and the defendant or his witnesses could prove what the conditions were before. He could do nothing more though he had been there with the jury. Indeed the record makes it clear that upon request he would have been allowed to go there afterwards in company with his

counsel. Opportunity was ample to learn whatever there was need to know.

If the risk of injustice to the prisoner is shadowy at its greatest, it ceases to be even a shadow when he admits that the jurors were brought to the right place and shown what it was right to see. That in substance is what happened here. On the trial, photographs and diagrams of the scene of the homicide were put in evidence by the Commonwealth and placed before the jury. There was no suggestion by the defendant or his counsel that these photographs and diagrams did not truly represent the place that had been seen upon the view. There was no suggestion of any change except the one that was conceded. The defendant took the stand and admitted that he was at the gasoline station at the time of the crime. He tried to reduce the grade of his wrongdoing by testifying that the shot had been fired by his codefendant Donnellon and that larceny, not robbery, was the aim of the conspiracy.[*] In the course of his testimony, he described his own and Donnellon's movements with the aid of the diagram in evidence. At the end of the trial he made a brief statement to the jury, supplementing the argument that had been made by his counsel. " I am sorry," he said, " that I had any part in the crime. I am sorry for the grief I have caused. But I did not fire the fatal shot. That is all." Nowhere is there a suggestion of any doubt as to the place. Like concessions are implicit in the summing up of counsel. His argument reminds the jurors of what they had seen upon

---

[*] Under the law of Massachusetts, homicide is murder in the first degree when committed " with deliberately premeditated malice aforethought " or in the commission or attempted commission of a crime that would be punishable, if there were no homicide, with imprisonment for life. Robbery by one armed with a dangerous weapon is a crime so punishable, but not larceny or attempted larceny. Mass. General Laws, c. 265, §§ 1 and 17.

the view, and of the dimensions of the building, which are shown also on the diagram. The place is undisputed.

If it be true that there is no denial of due process as the result of a bare inspection in the absence of a defendant, the question remains whether such a denial results where counsel are permitted, without any statement of the evidence, to point out particular features of the scene and to request the jury to observe them. The courts of Massachusetts hold that statements, thus restricted, are proper incidents of a view. "The essential features may be pointed out by the counsel. No witnesses are heard . . . There can be no comment or discussion." *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 29; 140 N.E. 470, 477; "One or two attorneys representing both the Commonwealth and the defendant go on the view, it being permissible to them, in the presence of each other and of the officers of the court, merely to point out to the jury 'marks, matters or things' but not otherwise to speak to the jury." *Ibid.* The rule in Massachusetts is that these acts are permissible though the defendant is not present (*ibid.*), and though he is kept away under protest. See *Commonwealth* v. *Belenski*, 276 Mass. 35; 176 N.E. 501, which was followed in the case at bar. *Commonwealth* v. *Snyder, supra.* We are to determine whether the Fourteenth Amendment prescribes anything to the contrary.

Obviously the difference between a view at which every one is silent and a view accompanied by a request to note this feature or another is one of degree, and nothing more. The mere bringing of a jury to a particular place, whether a building or a room or a wall with a bullet hole, is in effect a statement that this is the place which was the scene of the offense, and a request to examine it. When the tacit directions are made explicit, the defendant is not wronged unless the supplement of words so transforms the quality of the procedure that injustice will be done if the defendant is kept away. Statements to the jury

pointing out the specific objects to be noted have been a traditional accompaniment of a view for about two centuries, if not longer. The Fourteenth Amendment has not displaced the procedure of the ages. *Corn Exchange Bank* v. *Coler*, 280 U.S. 218; *Ownbey* v. *Morgan*, 256 U.S. 94; *Twining* v. *New Jersey, supra,* at pp. 100, 101.

As early as 1747 there is the record of a precedent that exhibits the remedy in action. The practice then was to place the jury in the charge of " showers," who were sworn to lead them to the view. The defendant in a civil action complained that the plaintiff's shower had misbehaved himself in his comments to the jury. " The court discharged the rule, being of opinion the showers may show marks, boundaries, etc., to enlighten the viewers, and may say to them, ' These are the places which on the trial we shall adapt our evidence to.' " *Goodtitle* v. *Clark,* Barnes, 457. At that time views were not taken in criminal cases without the consent of both the parties, the Crown as well as the defendant, except, it seems, upon indictments for maintaining a nuisance. *Rex* v. *Redman,* 1756, 1 Kenyon 384; s. c. Sayer's Rep. 303; *Commonwealth* v. *Handren,* 261 Mass. 294, 297; 158 N.E. 894; but see *Anonymous,* 1815, 2 Chitty 422. Cf. 1 Burr. Rep. 252. In 1825, however, a statute applicable to England and Wales supplied the defect of power, if defect there formerly had been. 6 George IV, c. 50, s. 23. Thereafter, in any case, " either civil or criminal," a view might be ordered in the discretion of the court. The form of oath administered to the showers appears in the reports. Thus, in *Regina* v. *Whalley,* 1847, 2 Cox Crim. Rep. 231, the oath administered was this: " You swear you will attend this jury and well and truly point out to them the place in which the offense for which the prisoner T. W. stands charged is alleged to have been committed; you shall not speak to them touching the supposed offence whereof the said T. W. is so charged, only so far as relates to describ-

112

ing the place aforesaid." See also *Queen* v. *Martin*, L.R., 1 Crown Cases Reserved 378; Tidd's Practice, vol. 2, pp. 797, 798; Gude's Crown Practice, London, 1828, vol. 2, pp. 655, 656; cf. Wigmore, Evidence, vol. 3, §§ 1802, 1803, and cases cited. So also in our own country, the power to order a view in criminal cases has been made certain by statutes enacted in nearly all the states (see the statutes collated in Wigmore on Evidence, vol. 2, § 1163), though there are instances in which the power has been treated as inherent. *State* v. *Perry*, 121 N.C. 533; 27 S.E. 997; *Commonwealth* v. *Knapp*, 9 Pick. 496, 515. The statutes, when enacted, conform very generally to the practice in the English courts, provision being made for the presence of the judge, or, in his discretion, for the appointment of showers sworn in the ancient form. Cf. the statutes and decisions in Wigmore, Evidence, vol. 3, §§ 1802, 1803, and vol. 2, § 1163; and see *Brooklyn* v. *Patchen*, 8 Wend. 47, 65; *State* v. *Perry*, *supra*, at p. 536. —

When the scene is explained by showers who are not the counsel for the parties, a defendant gains nothing by being present at a view any more than he gains where there is only a bare inspection without an explanatory word. He has no privilege in such circumstances, and certainly no constitutional privilege, to speak to the showers and give suggestions or advice. " We do not see what good the presence of the prisoner would do, as he could neither ask nor answer questions, nor in any way interfere with the acts, observations or conclusions of the jury." *People* v. *Bonney*, 19 Cal. 426, 446. It they fail to point out anything material, he may prove the fact upon the trial and ask for another view. He had the same privilege here, for there was a stenographic transcript of all that was said and done. Never, at any stage of the proceeding, has there been a suggestion by the de-

fendant or his counsel that there was need of something more.

The situation is not changed to his prejudice because the showers in this instance were the counsel for the parties. The choice of counsel for that purpose has its roots in ancient practice. Tidd's Practice, vol. 2, pp. 797, 798; Wigmore, Evidence, vol. 3, § 1803: cf. 1 Burr. 252. Far from being harmful, it supplies an additional assurance that nothing helpful to either side will be overlooked upon the view. True, indeed, it is that when counsel are the showers, the defendant may be able, if he is present, to give suggestion or advice, or so at least we may assume. Constitutional immunities and privileges do not depend upon these accidents. The Fourteenth Amendment does not say that showers are at liberty in the absence of the defendant to point out the things to be viewed if the showers are not counsel, but are not at liberty to do so if they happen to be counsel. The least a defendant must do, if he would annul the practice upon a view which the Commonwealth has approved by the judgment of its courts, is to show that in the particular case in which the practice is exposed to challenge, there is a reasonable possibility that injustice has been done. Cf. *Rutherford* v. *Commonwealth*, 78 Ky. 639; *Howard* v. *Kentucky, supra.* No one can read what was said at this view in the light of the uncontroverted facts established at the trial, and have even a passing thought that the presence of Snyder would have been an aid to his defense.

There is an approach to the subject from the viewpoint of history that clarifies the prospect. We may assume that the knowledge derived from an inspection of the scene may be characterized as evidence. Even if this be so, a view is not a " trial " nor any part of a trial in the sense in which a trial was understood at common law. This is seen from two circumstances. In the first place

the judge is not required to be present at a view, though he may go there if he will. In the second place, the practice for many years was to have a committee of the jurors, the usual number being six, attend at the view to represent the whole body. See the rules laid down by Lord Mansfield in 1 Burr. Rep. 252: also the provisions of the Act of 6 George IV, c. 50, §§ 23, 24 [1825], by which the practice was made uniform in criminal and civil cases: and compare Wigmore, Evidence, vol. 2, § 1165, and the cases cited. We have no thought to suggest that a view by a part of a jury is permissible today. That question is not before us. There is significance, none the less, in the fact that it was permissible in England, the home of the principle that a defendant charged with felony has the privilege of confronting his accusers and of being present at his trial. Certain it is that in the land where these maxims had their genesis and from which they were carried to our shores, the proceeding known as a trial was thought of as something very different from the proceeding known as a view. To transfer to a view the constitutional privileges applicable to a trial is to be forgetful of our history.

A fertile source of perversion in constitutional theory is the tyranny of labels. Out of the vague precepts of the Fourteenth Amendment a court frames a rule which is general in form, though it has been wrought under the pressure of particular situations. Forthwith another situation is placed under the rule because it is fitted to the words, though related faintly, if at all, to the reasons that brought the rule into existence. A defendant in a criminal case must be present at a trial when evidence is offered, for the opportunity must be his to advise with his counsel (*Powell* v. *Alabama, supra*), and cross-examine his accusers. *Dowdell* v. *United States, supra; Commonwealth* v. *Slavski, supra.* Cf. *Felts* v. *Murphy*, 201 U.S. 123. Let the words " evidence " and " trial " be extended

but a little, and the privilege will apply to stages of the cause at which the function of counsel is mechanical or formal and at which a scene and not a witness is to deliver up its message. In such circumstances the solution of the problem.is not to be found in dictionary definitions of evidence or trials. It is not to be found in judgments of the courts that at other times or in other circumstances the presence of a defendant is a postulate of justice. There can be no sound solution without an answer to the question whether in the particular conditions exhibited by the record the enforced absence of the defendant is so flagrantly unjust that the Constitution of the United States steps in to forbid it. What we are subjecting to revision is not the action of a legislature excluding a defendant from a view at all times or in all conditions. What is here for revision is the action of the judicial department of a state excluding the defendant in a particular set of circumstances, and the justice or injustice of that exclusion must be determined in the light of the whole record. Cf. *Howard* v. *Kentucky, supra; Chicago, B. & Q. R. Co.* v. *Chicago,* 166 U.S. 226, 234, 235. Discretion has not been abdicated. To the contrary, the record makes it clear that discretion has been exercised. Much is made of a supposed analogy between a view and a photograph, but the analogy, whatever its superficial force, is partial and misleading. The photograph to be admissible should be verified by the oath of the photographer, who must be subject to cross-examination as to the manner of its taking. It is common knowledge that a camera can be so placed, and lights and shadows so adjusted, as to give a distorted picture of reality. Nor is there need for us to hold that conditions can never arise in which justice will be outraged if there is a view in the defendant's absence. Enough for present purposes that they have not arisen here. "A statute may be invalid as applied to one state of facts and yet valid as applied

to another." *Dahnke-Walker Co.* v. *Bondurant,* 257 U.S. 282, 289; *DuPont* v. *Commissioner,* 289 U.S. 685, 688. If this is true of the action of the legislative department of the state laying down a general rule, it is even more plainly true of the action of judicial or administrative officers dealing only with the instance. Cf. *Nectow* v. *Cambridge,* 277 U.S. 183. We view the facts in their totality.

True, indeed, it is that constitutional privileges or immunities may be conferred so explicitly as to leave no room for an inquiry whether prejudice to a defendant has been wrought through their denial. In saying this we put aside cases within the rule of *de minimis.* If the defendant in a federal court were to be denied the opportunity to be confronted with the " witnesses against him," the denial of the privilege would not be overlooked as immaterial because the evidence thus procured was persuasive of the defendant's guilt. In the same way, privileges, even though not explicit, may be so obviously fundamental as to bring us to the same result. A defendant who has been denied an opportunity to be heard in his defense has lost something indispensable, however convincing the *ex parte* showing. But here, in the case at hand, the privilege, if it exists, is not explicitly conferred, nor has the defendant been denied an opportunity to answer and defend. The Fourteenth Amendment has not said in so many words that he must be present every second or minute or even every hour of the trial. If words so inflexible are to be taken as implied, it is only because they are put there by a court, and not because they are there already, in advance of the decision. Due process of law requires that the proceedings shall be fair, but fairness is a relative, not an absolute concept. It is fairness with reference to particular conditions or particular results: " The due process clause does not impose upon

the States a duty to establish ideal systems for the administration of justice, with every modern improvement and with provision against every possible hardship that may befall." *Ownbey* v. *Morgan, supra,* p. 110. What is fair in one set of circumstances may be an act of tyranny in others. This court has not yet held that even upon a trial in court the absence of a defendant for a few moments while formal documents are marked in evidence will vitiate a judgment.* Cf. *Commonwealth* v. *Kelly,* 292 Pa. 418; 141 Atl. 246. But we do not need to dwell upon the measure of the privilege at such a time or in such conditions. Whatever it may be, not even an intimation will be found in our decisions that there is a denial of due process if the accused be excluded from a view, though present at every stage of the proceedings in the court. It is one thing to say that the prevailing practice is to permit the accused to accompany the jury, if he expresses such a wish. It is another thing to say that the practice may not be changed without a denial of his privileges under the Constitution of the United States. To hold this in the light of the historic concept of a view as something separate from a trial in court and in the light of the shadowy relation between the defendant's

---

* What was said in *Hopt* v. *Utah, supra,* and *Schwab* v. *Berggren, supra,* on the subject of the presence of a defendant was dictum, and no more. See this opinion, *ante,* p. 106. We may say the same of *Lewis* v. *United States, supra,* with the added observation that it deals with the rule at common law and not with constitutional restraints.

There are decisions in the state courts that a conviction will stand even though rulings have been made by the trial court in the absence of the defendant if it appears that they could not by any possibility have resulted to his hurt. *Whittaker* v. *State,* 173 Ark. 1172; 294 S.W. 397; *Lowman* v. *State,* 80 Fla. 18; 85 So. 166. The Supreme Court of Pennsylvania held in *Commonwealth* v. *Kelly, supra,* that the burden was on the defendant to show a probability of injury.

presence at such a time and his ability to defend, is to travel far away from the doctrine of *Hurtado* v. *California* and *Twining* v. *New Jersey*.

One episode at the view must have a word of criticism. The statement by the judge that one of the three pumps was not there at the homicide goes beyond the bounds of explanation appropriate for showers. No objection on this score was made by the defendant, though he had or could have had the minutes of the proceeding. The blunder did not harm him, for there is no hint in all the evidence that the presence or absence of the pump had any bearing on the verdict. The situation is much the same as in cases where there has been misconduct by the jury. The verdict is not upset for such a cause, if there was no substantial harm. *People* v. *Johnson,* 110 N.Y. 134, 144; 17 N.E. 684; *People* v. *Dunbar Contracting Co.,* 215 N.Y. 416, 426; 109 N.E. 554; *United States* v. *Davis,* 103 Fed. 457, 467. But there is another answer more convincing, if these are insufficient. After returning from the view, the District Attorney offered in evidence a diagram of the station, and said to the jury, " It is agreed that this third pump was not there at the time of the offense." To this, defendant and his counsel gave assent by acquiescence. In effect the agreement was thus renewed and confirmed as if then made for the first time. The defendant was not hurt because it had been made once before.

Whether a defendant must be present at a view has been considered in the state courts with varying conclusions. Nearly always the argument has been directed to the local constitutions, generally to a provision that the accused must be confronted with the witnesses against him, sometimes a specific mandate that he be present at the trial. Never, so far as our search of the books informs us, has the privilege been established in opposition to the

local practice as an essential condition of due process under the federal constitution. Some courts have put their decision on the ground that a view is part of the trial. *State* v. *McGinnis,* 12 Idaho 336; 85 Pac. 1089; *Freeman* v. *Commonwealth,* 226 Ky. 850; 10 S.W. (2d) 827; *Noell* v. *Commonwealth,* 135 Va. 600, 619; 115 S.E. 679; *Benton* v. *State,* 30 Ark. 328, 350. Others have held that it is not. *People* v. *Thorn,* 156 N.Y. 286; 50 N.E. 947; *State* v. *Rogers,* 145 Minn. 303; 177 N.W. 358; *Washington* v. *State,* 86 Fla. 533; 96 So. 605; *State* v. *Mortensen,* 26 Utah 312; 73 Pac. 562, 633; cf. *State* v. *Congdon,* 14 R.I. 458, 463; *State* v. *Hilsinger,* 167 Wash. 427, 437, 438; 9 P. (2d) 357. A trial, they remind us, is appointed to be held in a courthouse or a place designated by statute with a judge or magistrate presiding. *People* v. *Thorn,* at p. 297. A view may be had anywhere. Some courts, placing the emphasis on the privilege of confrontation, have thought that a view is equivalent to an examination of a witness, and that the privilege of attendance may not even be waived. *Noell* v. *Commonwealth, supra; State* v. *McCausland,* 82 W.Va. 525; 96 S.E. 938; *Benton* v. *State, supra; Foster* v. *State,* 70 Miss. 755; 12 So. 822; *State* v. *Stratton,* 103 Kan. 226; 173 Pac. 300. Other courts have held, and plainly with the better reason, that physical objects are not witnesses, even though they have the quality of evidence, and that the defendant is at liberty to waive the privilege to view them, if such a privilege exists. *People* v. *Thorn, supra; Elias* v. *Territory,* 9 Ariz. 1; 76 Pac. 605; *Blythe* v. *State,* 47 Ohio 234; 24 N.E. 268; *State* v. *Hartley,* 22 Nev. 342; 40 Pac. 372; *State* v. *Buzzell,* 59 N.H. 65. Cf. *Patton* v. *United States, supra.\** Still others, though conceding the possibility of

---

\* Cases relating to the procedure at a view are not to be confused with cases where the defendant was absent during the examination of witnesses or the charge of the judge. Examples of such cases are

waiver, uphold the privilege to be present if due demand is made. *People* v. *Bush,* 68 Cal. 623; 10 Pac. 169; *People* v. *Auerbach,* 176 Mich. 23; 141 N.W. 869; *Carroll* v. *State,* 5 Neb. 31; *State* v. *Hilsinger, supra; Sasse* v. *State,* 68 Wis. 530; 32 N.W. 849; *Chance* v. *State,* 156 Ga. 428; 119 S.E. 303; *People* v. *Palmer,* 43 Hun 397. Massachusetts takes the position that waiver is unnecessary and that the defendant may be excluded in the discretion of the judge. *Commonwealth* v. *Belenski, supra; Commonwealth* v. *Snyder, supra.* So also does Minnesota. *State* v. *Rogers, supra.* In none the cases where the privilege was upheld did the defendant make the claim that there had been an infringement of his rights under the Fourteenth Amendment.

The decisions in the federal courts are, none of them, controlling. *Howard* v. *Kentucky, supra,* sustained a judgment of conviction against the claim of a denial of due process where the court in the absence of the defendant had discharged a juror for misconduct, and substituted another. There was evidence, however, leading to an

*Slocovitch* v. *State,* 46 Ala. 227; *People* v. *Beck,* 305 Ill. 593; 137 N.E. 454; *State* v. *Hutchinson,* 163 La. 146; 111 So. 656; *Duffy* v. *State,* 151 Md. 456; 135 Atl. 189; *State* v. *Jackson,* 88 Mont. 420; 293 Pac. 309; *State* v. *Dixon,* 185 N.C. 727; 117 S.E. 170; *State* v. *Schasker,* 60 N.D. 462; 235 N.W. 345; *State* v. *Chandler,* 128 Ore. 204; 274 Pac. 303. In most, if not all, there was an express statutory or constitutional requirement of presence at the trial, a requirement so clear as to leave little room for construction. One court has gone so far as to require the presence of the defendant upon a motion for a new trial (*State* v. *Hoffman,* 78 Mo. 256), in opposition to the judgments of this court in *Schwab* v. *Berggren* and *Lewis* v. *United States, supra.*

As to the rule where the crime is of the grade of a misdemeanor only, see *United States* v. *Santos,* 27 Fed. Cas. 954; *United States* v. *Shelton,* 6 F. (2d) 897; *Gray* v. *State,* 158 Tenn. 370; 13 S.W. (2d) 793. Cf. *Hopt* v. *Utah, supra,* at p. 576.

inference of waiver by the defendant and his counsel. *Diaz* v. *United States,* 223 U.S. 442, had to do with the privilege of confrontation, and drew an inference of waiver where the defendant had wilfully absented himself after the trial had been begun. Cf. Sir James Fitzjames Stephen, Digest of the Law of Criminal Procedure, Art. 302; *Smellie's Case,* 14 Crim. App. Reports 128. *Frank* v. *Mangum, supra,* found a waiver of the privilege of presence at the rendition of the verdict. None of these cases was concerned with the procedure at a view. *Valdez* v. *United States, supra,* considered a provision of the Philippine Code which confers the privilege of confrontation, and held that consistently therewith the scene of the crime might be viewed by the judge with the consent of the defendant's counsel, though without the knowledge of the client. The court added that " apart from any question of waiver " it would be pressing the privilege of confrontation too far to apply it in such circumstances, and moreover that in the circumstances of the case, the absence of the defendant was plainly immaterial, it " being difficult to divine how the inspection . . . added to or took from the case as presented."

We find it of no moment that the judge in this case described the view as evidence. The Supreme Judicial Court of Massachusetts has said of a view that " its chief purpose is to enable the jury to understand better the testimony which has or may be introduced." *Commonwealth* v. *Dascalakis; supra.* Even so, its inevitable effect is that of evidence, no matter what label the judge may choose to give it. *Commonwealth* v. *Handren, supra.* Such is the holding of many well considered cases. Wigmore, vol. 2, § 1168, pp. 705 *et seq.,* vol. 3, §§ 1802, 1803, collating the decisions. To say that the defendant may be excluded from the scene if the court tells the jury that

the view has no other function than to give them understanding of the evidence, but that there is an impairment of the constitutional privileges of a defendant thus excluded if the court tells the jury that the view is part of the evidence,—to make the securities of the constitution depend upon such quiddities is to cheapen and degrade them.

The law, as we have seen, is sedulous in maintaining for a defendant charged with crime whatever forms of procedure are of the essence of an opportunity to defend. Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.

The constitution and statutes and judicial decisions of the Commonwealth of Massachusetts are the authentic forms through which the sense of justice of the People of that Commonwealth expresses itself in law. We are not to supersede them on the ground that they deny the essentials of a trial because opinions may differ as to their policy or fairness. Not all the precepts of conduct precious to the hearts of many of us are immutable principles of justice, acknowledged *semper ubique et ab omnibus* (*Otis* v. *Parker*, 187 U.S. 606, 609), wherever the good life is a subject of concern. There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free.

The judgment is                  *Affirmed.*

MR. JUSTICE ROBERTS, dissenting.

The petitioner and two others were charged with murder committed in an attempt to rob a gasoline station. The petitioner and one of his co-defendants were tried together; the third testified for the Commonwealth.

There is no dispute that when the three embarked on their evil enterprise all were armed, and it is not denied that they approached the station with intent to commit either larceny or robbery; but the record exhibits grave contradictions as to which of them fired the fatal shot, and as to the petitioner's abandonment of the common plan before the shot was fired. The situation and size of the station, its arrangement, its contents, the location and size of doors and windows, and the position of surrounding objects, were vital factors in corroboration or contradiction of the varying accounts given in the testimony of the three participants.

After the jury had been empaneled and sworn the district attorney moved for a view of the scene of the murder. The request was granted. The district attorney then made a short statement to the jury, telling them they were to view the premises and that when they returned from the view he would make a fuller opening. In the course of a colloquy between counsel and the judge the latter announced that he would appoint the defendants' counsel to go on the view as representing their respective clients. Counsel for the petitioner moved that his client be permitted to accompany the jury on the view, asserting this was the defendant's right under the federal constitution. The motion was denied and an exception reserved to the ruling.

The judge, the official stenographer, the district attorney, and counsel for the defendants, accompanied the jury to the scene. The judge controlled the entire proceeding, and everything that was said or done was taken by the stenographer and made a part of the record of

the trial. The pointing out of features of the scene by the district attorney went beyond a mere showing, and what he said closely approached argument.[1] During the progress of the view the court formulated and placed of record a stipulation as to changes which had occurred since the shooting.[2] In his charge to the jury the judge said:

---

[1] The following are outstanding instances:

"The Court: Now, Mr. Volpe, if you are ready.

"Mr. Volpe. Just first stand here, gentlemen, and take a look inside of the gasoline station. Now step in, please.

"(The following occurred inside the filling station:)

"Mr. Volpe: Now, gentlemen, I call your attention to this glass here (indicating), this window (indicating the back window of the filling station,) about the position of the glass, and I ask you to look at that, and the relative position of the entrance, especially to the right or to the left, coming in through the door. And then this oil tank here on the right of this window; the other two windows on the right of the building, and I want you to take note of the size of the room, and this telephone here, and these two doors, one on each side of the telephone. Take note, also, of the location of this other gas tank over here, back of the door; this desk on the left. Also look out the window at the back, and notice the gravel in the yard, and the fence there."

"Mr. Volpe: I want you to take a view of the other side of the sidewalk from this location, and note the driveway on the right of the gas station, and on the left, and these two pumps, or three pumps, noticing the distance from the pumps on the entrance of the gas station.

"Now, I would like to have you come over here and take a look at the gas station as it sits back there.

"(The jury were taken across the street to the opposite sidewalk.)

"Mr. Volpe: I want you to get a look at the whole layout, the righthand entrance and the lefthand entrance over there, where that car is standing. Take particular notice of the width of this street, and, as you stand here, notice the bridge going towards Union Square, with the right and left driveways."

[2] What occurred is shown by the notes as follows:

"Mr. Volpe: That middle pump wasn't there at the time.

"The Court: It is agreed that the only pumps that were there were the two outside pumps, and that the middle, or blue one, was not there.

"Now, what have you before you on which to form your judgment and to render your finding and verdict? The view, the testimony given by the witnesses, and the exhibits, comprise the evidence in this case, comprise the evidence that is before you."[3]

"As I say, it is for the jury to say, from all the evidence before you, taking into consideration what it is contended outside of the evidence that you have relative to the firing of any shot—the conduct of any of the parties just before and just after, and any appearances or any evidence that you may gather from the appearance of the locality itself, the testimony relative to the result of the shot, the course of it, and what was done. All that is a part of the sur-rounding evidence and the circumstances that you shall take into consideration. And then, having taken all the surrounding circumstances into consideration, it is for you to say from all the evidence before you, whether or not it was a withdrawal."[3]

In Massachusetts what the jury observes in the course of a view is evidence in the cause. In *Tully* v. *Fitchburg R. Co.*, 134 Mass. 499, 503, it was said:

"In many cases, and perhaps in most, except those for the assessment of damages, a view is allowed for the pur-

---

"Mr. Volpe: Yes, your Honor.

"The Court: I can state that to them.

"(The jury left the bus and assembled on the sidewalk.)

"The Court: Now, it is agreed that at the time of the offense,—that is, on April 9, 1931,—there were but two pumps in front of the gasoline station, the one on the extreme right, that is painted green, and the one on the extreme left, that is painted black. Those two were there. The one in the middle, with the blue striping on it, was not there. It is also suggested that the jurors look at the street lights from that corner down there (indicating), and the situation of those lights and those down the street."

[3] During the trial, when certain plans were being put in evidence, the judge said: "What they [the jury] saw is to be taken equally with any evidence that is before them."

pose of enabling the jury better to understand and apply the evidence which is given in court; but it is not necessarily limited to this; and, in most cases of a view, a jury must of necessity acquire a certain amount of information, which they may properly treat as evidence in the case."

And in *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 29–30; 140 N.E. 470, 478, a prosecution for homicide, the Supreme Judicial Court held:

" The things thus seen by the jurors could not well be banished from their minds. A view often dispenses with the necessity of detailed description by plan or word of mouth. Inevitably that which the jury see on a view will be utilized in reaching a verdict. In that sense that which is disclosed on a view is evidence. It is rightly described as such. Expressions to that effect are in numerous decisions."

In *Commonwealth* v. *Handren,* 261 Mass. 294, 297; 158 N.E. 894, 896, the court observed:

"And the knowledge which the jurors thus acquire is evidence in the case."

Of such weight is the knowledge thus obtained that it may tip the scales in favor of the sufficiency of the evidence to sustain a verdict. Thus in *Hanks* v. *Boston & A. R. Co.,* 147 Mass. 495, 499; 18 N.E. 218, 220, where the question was whether the case ought to have been submitted to the jury or a binding direction given, it was said:

" It is to be observed that the jury may have been materially aided by a view taken by them of the locality."

Compare *Smith* v. *Morse,* 148 Mass. 407, 410; 19 N.E. 393.

It necessarily follows that the court may instruct the jury to take into consideration what they saw. In *Commonwealth* v. *Mara,* 257 Mass. 198, 209; 153 N.E. 793, 795, the ruling was:

" There was no error in the part of the instructions which permitted the jury to consider in deciding this question what they observed on the view."

And in *Commonwealth* v. *Mercier*, 257 Mass. 353, 365; 153 N.E. 834, 836, this was said:

" The defendant also excepted to the statement by the trial judge to the jury that what they would see on the view would be competent evidence for them to consider. . . . There was no error in the statement of the judge as to the right of the jury to consider as evidence what was seen by them on the view."

In the light of these rulings, which were concretely applied in this case, the question is whether the denial of petitioner's request to be present at the view deprived him of the due process guaranteed by the Fourteenth Amendment. This court has never had occasion to pass upon the precise point; but many pronouncements regarding the requirements of due process seem to leave no doubt as to the proper resolution of the issue.

The concept of due process is not technical. Form is disregarded if substantial rights are preserved.[4] In whatsoever proceeding, whether it affect property or liberty or life, the Fourteenth Amendment commands the observance of that standard of common fairness, the failure to observe which would offend men's sense of the decencies and proprieties of civilized life. It is fundamental that there can be no due process without reasonable notice and a fair hearing.[5] Though the usual and customary forms of procedure be disregarded, the hearing may neverthe-

---

[4] *Hurtado* v. *California*, 110 U.S. 516, 524, 532; *Louisville & N. R. Co.* v. *Schmidt*, 177 U.S. 230, 236; *Simon* v. *Craft*, 182 U.S. 427, 436; *Holmes* v. *Conway*, 241 U.S. 624.

[5] *Hagar* v. *Reclamation District No. 108*, 111 U.S. 701, 708; *Hooker* v. *Los Angeles*, 188 U.S. 314, 318; *Twining* v. *New Jersey*, 211 U.S. 78, 111.

less be fair, if it safeguards the defendant's substantial rights.

The States need not adopt a particular form of accusation,[6] or prescribe any one method of trial,[7] or adhere to any set mode of selecting the triers of fact.[8] To conform to modern conditions, they may substitute a new form of procedure for one long practised and recognized.[9] But, whatever the form or method of procedure adopted, they remain always subject to the prohibition against that which is commonly thought essentially unfair to him who is to be afforded a hearing. Tested by this principle the trial of an issue beyond the claim asserted,[10] the participation of a judge affected with a personal interest in the result,[11] the forcing of a trial under pressure of mob domination,[12] or the deprivation of the right to present evidence bearing on the issue,[13] have been adjudged to deny due process. And this court has recently decided that in the trial of a capital offense due process includes the right of the accused to be represented by counsel.[14]

Our traditions, the Bills of Rights of our federal and state constitutions, state legislation and the decisions of the courts of the nation and the states, unite in testimony that the privilege of the accused to be present throughout

---

[6] Hurtado v. California, supra; Caldwell v. Texas, 137 U.S. 692; Bolln v. Nebraska, 176 U.S. 83; Barrington v. Missouri, 205 U.S. 483.

[7] Walker v. Sauvinet, 92 U.S. 90; Maxwell v. Dow, 176 U.S. 581; Jordan v. Massachusetts, 225 U.S. 167.

[8] Brown v. New Jersey, 175 U.S. 172; Howard v. Kentucky, 200 U.S. 164; Rawlins v. Georgia, 201 U.S. 638.

[9] Hurtado v. California, supra, 528, 529; Twining v. New Jersey, supra, 111.

[10] Windsor v. McVeigh, 93 U.S. 274, 282; Standard Oil Co. v. Missouri, 224 U.S. 270, 281–2.

[11] Tumey v. Ohio, 273 U.S. 510.

[12] Moore v. Dempsey, 261 U.S. 86.

[13] Saunders v. Shaw, 244 U.S. 317.

[14] Powell v. Alabama, 287 U.S. 45.

his trial is of the very essence of due process. The trial as respects the prisoner's right of presence in the constitutional sense, does not include the formal procedure of indictment or preliminary steps antecedent to the hearing on the merits, or stages of the litigation after the rendition, of the verdict,[15] but does comprehend the inquiry by the ordained trier of fact from beginning to end.[16]

Speaking generally of the administration of criminal justice throughout the nation, this court has said:[17] "A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner;" and in enforcing the mandate of a territorial statute this language was used:[18]

"Such being the relation which the citizen holds to the public, and the object of punishment for public wrongs, the legislature has deemed it essential to the protection of one whose life or liberty is involved in a prosecution for felony, that he shall be personally present at the trial, that is, at every stage of the trial when his substantial rights may be affected by the proceedings against him. If he be deprived of his life or liberty without being so present, such deprivation would be without that due process of law required by the Constitution."

To allay the apprehensions of the people lest the federal government invade their liberties, the first ten amendments to the Constitution were adopted. The Sixth assures one accused of crime that if prosecuted under federal law he shall have a public trial, be informed of the nature and cause of the accusation, be confronted with

---

[15] *Schwab* v. *Berggren*, 143 U.S. 442; *Dowdell* v. *United States*, 221 U.S. 325, 331.

[16] *Hopt* v. *Utah*, 110 U.S. 574; *Lewis* v. *United States*, 146 U.S. 370; *Diaz* v. *United States*, 223 U.S. 442.

[17] *Lewis* v. *United States*, supra, p. 372.

[18] *Hopt* v. *Utah*, supra, p. 579.

the witnesses against him, and have the assistance of counsel for his defense. But the-purpose that all trials, in state as well as national tribunals, should not lack the same quality of fairness, is evidenced by the embodiment of a guarantee of similar import in the constitution of every state in the Union.[19] Out of excess of caution the fundamental law of many of the States specifically safeguards the right of the accused, " to appear and defend in person." [20] But mere differences in phraseology have not obscured the fact that all these instruments were intended to secure the same great privilege—a fair hearing. Accordingly, the courts have uniformly and invariably held that the Sixth Amendment, as respects federal trials, and the analogous declarations of right of the state constitutions touching trials in state courts, secure to the accused the privilege of presence at every stage of his trial. This court has so declared. In commenting upon the section of the Philippine Civil Government Act which extends to the accused in all criminal prosecutions " the right to be heard by himself and counsel," this was said:

"An identical or similar provision is found in the constitutions of the several States, and its substantial equiv-

[19] In two States (California and Nevada) the constitutions omit reference to the right of the accused to confront the witness against him; but the omission is supplied by statute: Cal. Stats. 1911, Ch. 187, p. 364, Penal Code, § 686; Nevada Compiled Laws, 1929, Vol. 5, § 10654.

[20] Arizona, Const. of 1910, Art. II, § 24; California, Const. of 1879, Art. I, § 13; Colorado, Const. of 1876, Art. II, § 16; Idaho, Const. of 1889, Art. I, § 13; Illinois, Const. of 1870, Art. 2, § 9; Kansas, Const. of 1859, Bill of Rights, § 10; Missouri, Const. of 1875, Art. II, § 22; Montana, Const. of 1889, Art. III, § 16; Nebraska, Const. of 1875, Art. I, § 11; Nevada, Const. of 1864, Art. I, § 8; New Mexico, Const. of 1911, Art. II, § 14 (as amended); New York, Const. of 1894, Art. I, § 6; North Dakota, Const. of 1889, Art. I, § 13; Ohio, Const. of 1851, (as amended Sept. 3, 1912), Art. I, § 10; South Dakota, Const. of 1889, Art. VI, § 7; Utah, Const. of 1895, Art. I, § 12; Washington, Const. of 1889, Art. I, § 22; Wyoming, Const. of 1889, Art. I, § 10.

alent is embodied in the Sixth Amendment to the Constitution of the United States. . . . In cases of felony our courts, with substantial accord, have regarded it [the right so granted] as extending to every stage of the trial, inclusive of the empaneling of the jury and the reception of the verdict, and as being scarcely less important to the accused than the right of trial itself." [21]

And, as if to make assurance doubly sure, the legislatures of many of the States have adopted statutes redundant to the constitutional mandate explicitly declaring the right of the accused to be present at his trial. [22]

In the light of the universal acceptance of this fundamental rule of fairness that the prisoner may be present throughout his trial, it is not a matter of assumption but a certainty that the Fourteenth Amendment guarantees the observance of the rule.

It has been urged that the prisoner's privilege of presence is for no other purpose than to safeguard his opportunity to cross-examine the adverse witnesses. But the privilege goes deeper than the mere opportunity to cross-examine, and secures his right to be present at every stage of the trial. The cases cited in the margin, [23] while by no

[21] *Diaz* v. *United States, supra,* p. 454.

[22] La. Code Crim. Proc. (Dart 1932), Art. 365. Ann. Laws of Mass., Vol. 9, Ch. 278, § 6; Comp. Laws Michigan, 1929, Vol. 3, Ch. 287, § 17129; Revised Codes of Montana, 1921, Vol. 4, Part II, Ch. 1, § 11611; Nevada Comp. Laws, 1929, Vol. 5, § 10654, § 10921; New York Code of Crim. Pro., Cahill, § 8, par. 2; No. Dak. Comp. Laws, 1913, Vol. 2, § 10393; Code of Laws of South Carolina, 1932, § 996; Vermont General Laws 1917, § 2496; Virginia Code of 1930, § 4894; Pierce's Washington Code, § 1086–324; Wisconsin Statutes 1931, § 357.07; Wyoming Revised Statutes, 1931, § 33–903.

[23] *Slocovitch* v. *State,* 46 Ala. 227; *Whittaker* v. *State,* 173 Ark. 1172; 294 S.W. 397; *Lowman* v. *State,* 80 Fla. 18; 85 So. 166; *Chance* v. *State,* 156 Ga. 428; 119 S.E. 303; *People* v. *Beck,* 305 Ill. 593; 137 N.E. 454; *Batchelor* v. *State,* 189 Ind. 69; 125 N.E. 773; *State* v. *Reidel,* 26 Iowa 430; *Riddle* v. *Commonwealth,* 216 Ky. 220; 287 S.W. 704; *State* v. *Hutchinson,* 163 La. 146; 111 So. 656; *Duffy* v.

means exhausting the authorities, sufficiently illustrate
and amply sustain the proposition that the right is funda-
mental an.l assures him who stands in jeopardy that he
may in person, see, hear and know all that is placed before
the tribunal having power by its finding to deprive him
of. liberty or life. · It would be tedious and unnecessary
to quote the language used in vindication of the privilege.
The books are full of discussions of the subject.

The accused cannot cross-examine his own witnesses.
Will it be suggested that, for this reason, he may be ex-
cluded from the court room while they give their evidence?
He cannot cross-examine documents or physical exhibits.
But documents, plans, maps, photographs, the clothing
worn by the victim and by the perpetrator of the alleged
crime, the weapon used, and other material objects may
be more potent than word of mouth, to carry conviction
to the jury's mind; and, so of the physical appearance of
the scene of the crime. No reason is apparent why, if
the accused may be excluded from a view, he may not
also be excluded from the court room while such docu-
mentary and physical evidence is proffered to and ex-
amined by the jury. The opportunity for cross-examina-
tion of witnesses is only one of many reasons for the
defendant's presence throughout the trial. In no State
save in the Commonwealth of Massachusetts, and in no

State, 151 Md. 456; 135 Atl. 189; Commonwealth v. Cody, 165 Mass.
133; 42 N.E. 575; State v. Dingman, 177 Minn. 283; 225 N.W. 82;
Foster v. State, 70 Miss. 755; 12 So. 822; State v. Hoffman, 78 Mo.
256; State v. Jackson, 88 Mont. 420; 293 Pac. 309; Miller v. State,
29 Neb. 437; 45 N.W. 451; State v. Duvel, 103 N.J.L. 715; 137 Atl.
718; People v. Perkins, 1 Wend. 91; State v. Dixon, 185 N.C. 727;
117 S.E. 170; State v. Schasker, 60 N.D. 462; 235 N.W. 345; Cole v.
State, 35 Okla. Cr. Rep. 50; 248 Pac. 347; State v. Chandler, 128
Ore. 204; 274 Pac. 303; Gray v. State, 158 Tenn. 370; 13 S.W. (2d)
793; Schafer v. State, 118 Tex. Cr. Rep. 500; 40 S.W. (2d) 147;
State v. Mannion, 19 Utah 505; 57 Pac. 542; Palmer v. Common-
wealth, 143 Va. 592; 130 S.E. 398; State v. Shutzler, 82 Wash. 365;
144 Pac. 284; State v. Howerton, 100 W.Va. 501; 130 S.E. 655.

cases save in those there recently decided, has the privilege or the fundamental nature of the right it preserves been questioned or denied. As the cases show,[24] the right of presence exists at every step in the trial, whether it be during the giving of oral testimony, the submission of a document, the presentation of physical exhibits, the argument of counsel, the charge of the court, or the rendition of the verdict.

It cannot successfully be contended that as the Sixth Amendment has no application to trials in state courts, and the Fourteenth does not draw to itself and embody the provisions of state constitutions (*Patterson* v. *Colorado*, 205 U.S. 454), the due process secured by the Fourteenth Amendment does not embrace a right secured by those instruments. In *Powell* v. *Alabama, supra*, the argument that the conclusion would be difficult that the right to counsel specifically preserved by the Sixth Amendment was also within the intendment of the due process clause of the Fourteenth, was answered thus:

"In . . . *Chicago, Burlington & Quincy R. Co.* v. *Chicago*, 166 U.S. 226, 241, this court held that a judgment of a state court, even though authorized by statute, by which private property was taken for public use without just compensation, was in violation of the due process of law required by the Fourteenth Amendment, notwithstanding that the Fifth Amendment explicitly declares that private property shall not be taken for public use without just compensation. This holding was followed in *Norwood* v. *Baker*, 172 U.S. 269, 277; *Smyth* v. *Ames*, 169 U.S. 466, 524; and *San Diego Land Co.* v. *National City*, 174 U.S. 739, 754.

"Likewise, this court has considered that freedom of speech and of the press are rights protected by the due process clause of the Fourteenth Amendment, although in the First Amendment, Congress is prohibited in spe-

---

[24] See the cases cited in notes 16 and 23.

cific terms from abridging the right. *Gitlow* v. *New York,* 268 U.S. 652, 666; *Stromberg* v. *California,* 283 U.S. 359, 368; *Near* v. *Minnesota,* 283 U.S. 697, 707.

". . . The rule is an aid to construction, and in some instances may be conclusive; but it must yield to more compelling considerations whenever such considerations exist. The fact that the right involved is of such a character that it cannot be denied without violating those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions' (*Hebert* v. *Louisiana,* 272 U.S. 312, 316), is obviously one of those compelling considerations which must prevail in determining whether it is embraced within the due process clause of the Fourteenth Amendment, although it be specifically dealt with in another part of the Federal Constitution." (pp. 66, 67.)

If, then, a view of the premises where crime is alleged to have been committed is a part of the process of submission of data to the triers of fact, upon which judgment is to be founded; if the knowledge thereby gained is to play its part with oral testimony and written evidence in striking the balance between the state and the prisoner, it is a part of the trial. If this is true the Constitution secures the accused's presence. In this conclusion all the courts, save those of Massachusetts, agree. Such difference of view as the authorities exhibit as to the prisoner's right to be present at a view arises out of a disagreement on the question whether the view is a part of the trial, whether it is, in effect, the taking of evidence. The great weight of authority is that it forms a part of the trial, and for that reason a defendant who so desires is entitled to be present.[25] Many decisions hold that he may waive the

[25] *Benton* v. *State,* 30 Ark. 328; *People* v. *Bush,* 68 Cal. 623; 10 Pac. 169; 71 Cal. 602, 12 Pac. 781; *Washington* v. *State,* 86 Fla. 533; 98 So. 605; *Chance* v. *State,* 156 Ga. 428; 19 S.E. 303; *State* v. *McGinnis,* 12 Idaho 336; 85 Pac. 1089; *Freeman* v. *Commonwealth,*

privilege;[26] but an examination of the cases discloses none (with a single possible exception) where a denial of his request to accompany the jury on the view has not been held reversible error. And the statements that a view is not a part of the trial or that it is not the taking of evidence, and denying, on that ground, the defendant's right to be present, are invariably found in cases where the defendant requested the view and did not ask to accompany the jury, or waived either expressly or by conduct his right so to do. Such statements are dicta, since the accused waived whatever right he had. Moreover, in several of the opinions which deny the right it is said that the prisoner ought always to be allowed to accompany the jury if he so requests.[27]

---

226 Ky. 850; 10 S.W. (2d) 827; *State v. Bertin*, 24 La. Ann. 46; *People v. Auerbach*, 176 Mich. 23, 45; 141 N.W. 869 (semble); *Bailey v. State*, 147 Miss. 428; 112 So. 594; *Carroll v. State*, 5 Neb. 31; *Colletti v. State*, 12 Oh. App. 104; *Watson v. State*, 166 Tenn. 400; 61 SW. (2d) 476; *State v. Mortensen*, 26 Utah 312; 73 Pac. 562, 633; *Noell v. Commonwealth*, 135 Va. 600; 115 S.E. 679; *State v. Hilsinger*, 167 Wash. 427; 9 P. (2d) 357; *State v. McCausland*, 82 W.Va. 525; 96 S.E. 938.

[26] *Whitley v. State*, 114 Ark. 243; 169 S.W. 952; *People v. Searle*, 33 Cal. App. 228; 164 Pac. 819; *Haynes v. State*, 71 Fla. 585; 72 So. 180; *State v. Stratton*, 103 Kan. 226; 173 Pac. 300; *State v. Hartley*, 22 Nev. 342; 40 Pac. 372; *Colletti v. State*, 12 Oh. App. 104; *Starr v. State*, 5 Okla. Cr. Rep. 440; 115 Pac. 356; *State v. Congdon*, 14 R.I. 458; *Jenkins v. State*, 22 Wyo. 34; 134 Pac. 260, 135 *id.* 749

[27] *Elias v. Territory*, 9 Ariz. 1; 76 Pac. 605; *Shular v. State*, 105 Ind. 289; 4 N.E. 870; but see *Barber v. State*, 199 Ind. 146; 155 N.E. 819; *State v. Rogers*, 145 Minn. 303; 177 N.W. 358; *People v. Thorn*, 156 N.Y. 286; 50 N.E. 947; *State v. Sing*, 114 Ore. 267, 274; 229 Pac. 921; *Commonwealth v. Van Horn*, 188 Pa. 143; 41 Atl. 469; *State v. Collins*, 125 S.C. 267; 118 S.E. 423. The last mentioned case, while apparently a decision against the right, contains but a mere statement on the subject without reference to the occurrences at the trial, and is probably based upon a waiver. It cites as authority *State v. Suber*, 89 S.C. 100; 71 S.E. 466, which is a clear case of waiver. If this is not so the case apparently stands alone.

It is true there is disagreement as to the nature and function of a view. On the one hand, the assertion is that its purpose is merely to acquaint the jury with the scene and thus enable them better to understand the testimony, and hence it forms no part of the trial and is not the taking of evidence. On the other, the suggestion is that the jury are bound to carry in mind what they see, and form their judgment from the knowledge so obtained, and so the view amounts to the taking of evidence.[28] The distinction seems too fine for practical purposes; but however that may be, discussion of this abstract question is unimportant in a case like the present where the view was held to be evidence, and the jury were expressly so instructed.

The respondent urges that whatever may have been the petitioner's right, the record demonstrates he could have suffered no harm by reason of his absence. The argument is far from convincing in the light of the circumstances and the rule announced by the court as respects the use the jury were at liberty to make of the knowledge gained by their view of the premises. But if it were clear that the verdict was not affected by knowledge gained on the view or that the result would have been the same had the appellant been present, still the denial of his constitutional right ought not be condoned. Nor ought this court to convert the inquiry from one as to the denial of the right into one as to the prejudice suffered by the denial. To pivot affirmance on the question of the amount of harm done the accused, is to beg the constitutional question involved. The very substance of the defendant's right is to be present. By hypothesis it is

[28] Compare with cases cited in note 25 the following: *Jenkins* v. *State*, 22 Wyo. 34; 134 Pac. 260; 135 *id*. 749; *State* v. *Hartley*, 22 Nev. 342; 40 Pac. 372; *People* v. *Thorn*, 156 N.Y. 286; 50 N.E. 947; *Starr* v. *State*, 5 Okla. Cr. Rep. 440; 115 Pac. 356; *State* v. *Lee Doon*, 7 Wash. 308; 34 Pac. 1103.

unfair to exclude him. As this court has recently said with respect to disregard of the mandate of the Sixth Amendment respecting trial by jury: [29]

"But the constitutional question cannot thus be settled by the simple process of ascertaining that the infraction assailed is unimportant when compared with similar but more serious infractions which might be conceived. . . . It is not our province to measure the extent to which the Constitution has been contravened and ignore the violation, if in our opinion, it is not, relatively, as bad as it might have been."

A distinction has always been observed in the meaning of due process as affecting property rights, and as applying to procedure in the courts. In the former aspect the requirement is satisfied if no actual injury is inflicted and the substantial rights of the citizen are not infringed; the result rather than the means of reaching it is the important consideration. But where the conduct of a trial is involved, the guarantee of the Fourteenth Amendment is not that a just result shall have been obtained, but that the result, whatever it be, shall be reached in a fair way. Procedural due process has to do with the manner of the trial; dictates that in the conduct of judicial inquiry certain fundamental rules of fairness be observed; forbids the disregard of those rules, and is not satisfied, though the result is just, if the hearing was unfair.

In this case, the view was a part of the trial. The jury were not sent to the scene in the custody of bailiffs who had no knowledge of the place or the circumstances of the crime. They were not instructed to view the premises so as to better understand the testimony. They went forth with the judge presiding, the stenographer officiating, the District Attorney and the counsel of the defendants. As has been shown, more than a mere view of the

---

[29] *Patton v. United States,* 281 U.S. 276, 292.

premises was had. Matters were called to the jury's attention in detail so that they could form judgments of distance, relative position, the alinements of objects, all having a crucial bearing upon the truthfulness of the testimony subsequently given, and they were told they might take their own estimates of these matters in corroboration or contradiction of the other evidence. Little wonder, in these circumstances, that the court felt it right to appoint the defendants' counsel to accompany the jury on the view. If the prisoners were entitled to this protection, by the same token they were entitled themselves to be present.

I think that the petitioner was deprived of a constitutional right and that the judgment should be reversed.

MR. JUSTICE BRANDEIS, MR. JUSTICE SUTHERLAND and MR. JUSTICE BUTLER concur in this opinion.