## UNITED STATES v. BRIDGES et al.

United States District Court
N. D. California.

Aug. 7, 1950.

See also 9 Cir., 184 F.2d 881.

990

———◆———

Frank J. Hennessy, U. S. Atty., R. B. McMillan, Deputy U. S. Atty., San Francisco, Cal., F. Joseph Donahue, Washington, D. C., for plaintiff.

Gladstein, Andersen, Resner & Sawyer, Norman Leonard, Vincent Halliman, San Francisco, Cal., for defendants.

HARRIS, District Judge.

The United States Government has moved this Court to revoke the order made on April 10, 1950, admitting the defendant Harry Bridges to bail. The order was made after his conviction of a violation of Title 18, United States Code, Section 88, now 18 United States Code Annotated, Section 371, in that he was found guilty, after trial by jury, of conspiring with Henry Schmidt and J. R. Robertson to defraud the United States in petitioning for and obtaining naturalization; also of a violation of Title 8, United States Code, Section 746(a), subdivision (1), now 18 United States Code Annotated, Section 1015(a), in that he knowingly gave a false statement under oath in the naturalization proceeding.

The basis for the prosecution was that Bridges lied when, under oath, he denied his membership in the Communist Party. Thereafter, on June the 20th, 1950, this Court, on motion of the United States Government and after a full and complete hearing thereon, duly revoked, set aside and declared void the order admitting Mr. Bridges to citizenship.

The present motion is made upon the ground that Mr. Bridges has pursued and will continue to pursue a course of conduct and activity dangerous to the public welfare, safety and national security of the United States.

The affidavit, in support of the motion, of John H. McGowan, Investigator for the Immigration and Naturalization Service, has been received and considered by this Court.

The defendant, Mr. Bridges, has filed a motion to dismiss and a motion to strike.

The primary contention advanced in the motion is that the incidents complained of by the Government, and the conduct of Mr. Bridges, fall within the orbit of the Constitutional guarantee of the First Amendment, which safeguards the right of freedom of speech and expression as contained in the Bill of Rights.

■ The Court has also received the oral testimony of the defendant, Mr. Bridges, in attempted explanation of his conduct. The basic contention of the defendant is, as set forth in his notice of motion and as more particularly amplified in the arguments, that the burden is on the Government to show that the Court committed error when, on April 10, 1950, Bridges was admitted to bail; and that the Court is now foreclosed from inquiry into Bridges' conduct since that time. The theory espoused is referred to either as an estoppel or under the doctrine of res adjudicata. Such, of course, is not and cannot be the legal posture of this case.

Rule 46(a)(2), Federal Rules of Criminal Procedure, 18 U.S.C.A., provides: "The court or the judge or justice allowing bail may at any time revoke the order admitting the defendant to bail."

■ A man who has been found guilty in the District Court has no absolute or constitutional right to bail after conviction and pending appeal. He has a right only to apply for bail. After the conviction of Mr. Bridges, the Court in the exercise of discretion permitted him to remain at large on bail. In view of, and in the light of his conduct and the events transpiring since the Court's initial determination, the Government now contends that the order should be revoked.

It is not claimed, then—or now—that there was error implicit in the original order admitting him to bail; rather, that he has, in effect, constituted himself an

agent and spokesman for the Communists in uniformly and vigorously opposing measures that would tend to aid or help our embattled troups on the Korean front.

Under the circumstances, the Court's duty is clear and involves the weighing of the conduct of Mr. Bridges against the welfare of the people of the United States of America, and the determination should be made as best affects justice between the Government and the defendant.

In this connection Mr. Justice Cardozo, in Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 338, 78 L.Ed. 674, a Supreme Court decision said: "But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."

I am satisfied to a moral certainty and beyond a reasonable doubt that Harry Bridges was and is a member of the Communist Party. The jury in the principal trial came to that inevitable conclusion after months of evidence and argument, and after a review of his career since on or about 1933. I am also led to believe from the extensive proceedings before me involving this defendant that he is probably one of the most potent figures in the Communist Party in America today. As such a member, he is an agent dedicated to execute the Communist program, both nationally and internationally. As such agent, his allegiance is not and can not be to the United States of America—notwithstanding his plaint to the contrary and his studied misconceptions as to his loyalty.

His conduct since the inception of the recent hostilities in Korea, as well as his equivocal testimony in this proceeding, are of such nature as to justify this Court in concluding that when the welfare of this country and its armed forces are at stake, as opposed to a Communist regime, that his loyalty is and must be with the Communists.

In American Communications Ass'n, C. I. O. v. Douds, 339 U.S. 382, 70 S.Ct. 674, 698, Mr. Justice Jackson of the United States Supreme Court said: "American Communists, like Communists elsewhere in the world, place Moscow's demand above every patriotic interest."

And in speaking of the Communists' "somersault", in World War II, he said, during the course of the same opinion: " * * * the Communists in this country made an abrupt and fierce reversal and were unconscionable in their demands that American soldiers, whose equipment they had delayed and sabotaged, be sacrificed in a premature second front to spare Russia. American Communists, like Communists elsewhere in the world, placed Moscow's demand above every patriotic interest."

I am inclined to observe that the same attitude of the American Communists prevails today in these trying, tragic times. Mr. Bridges has spearheaded, since his release on bail, and within recent date, a serious opposition to security measures, including a "Security Conference Statement of Policy," which was designed to protect the People of San Francisco, its ports and the welfare of our armed forces. In my opinion, such opposition was taken by him solely for the purpose of protecting the Communist party and his Communist cohorts within the union, and not for the benefit of the rank and file or the country as a whole.

Of equal significance was his refusal to disavow affiliation in and with the World Federation of Trade Unions, an international organization which he admits—and yesterday admitted in consequence of my questions—is controlled and dominated by Communists. In a bulletin of July 12, 1950, the World Federation of Trade Unions called all affiliated organizations to "take all immediate and indispensable action to defeat the diabolical plans of the American war mongers and to support their brother unionists in Korea who are fighting alongside the whole Korean people for liberation of their country." Observe the language as embraced in that mandate —"immediate and indispensable action"— which includes not only subversive activity, but every form of known propaganda.

Mr. Bridges' weak and vacillating explanation was that future possible economic and other support from the Communist organization justified him in continuing the membership and "that we should not be too hasty to cut off all our ties, as we may need them at some future date."

I say that adherence to the program of the World Federation of Trade Unions, as delineated in the form in which I have just read, is traitorous.

In addition, the conclusion may be drawn that Mr. Bridges was reminded of an earlier resolution by the World Federation of Trade Unions, and its affiliates, under date of July 15, 1949, at its convention in Marseilles, France, when they pledged to boycott goods transported on any vessel employing "Government stool pigeons and informers" who might testify for the Government in the prosecution of Harry Bridges.

It is manifest to this Court that since his conviction, Mr. Bridges has openly, consistently and vigorously followed the Communist party line, as particularly outlined in the Government's affidavit. His denials in this respect on the witness stand were not convincing to the Court.

His defense of Sydney Rogers was nothing more nor less than an attempt to have the International Longshoremen and Warehousemen's Union subsidize the services of an outright propagandist for the Communist party.

This is not a time for divided loyalty. In answer to counsel's contention that the granting of bail is essential for the protection of his rights to appeal, I simply say that he has deliberately and designedly forfeited such claim to be admitted to bail, and that his brazen conduct is opposed to the welfare of our Government in this period of crisis and emergency. This is no time to temporize or deal in Communist "double talk".

The problem confronting this Court cannot be viewed in a judicial vacuum, divorced from actual and critical conditions confronting our people. The defense, through Mr. MacInnis, has read into the record a number of statements emanating from individuals having no direct or indirect bearing upon the loading of ships, security measures on our waterfront, or the perpetuation of the war effort. Mr. Bridges' position on the waterfront in a focal point, involving the operation of thousands of men, is entirely different. The influence which he exerts and the persuasive effect on the armed forces, is manifest. He is in a position to work detriment by his studied, subtle means, and adroit Communist tactics and practices.

The Army, Navy and Marine Corps will hold the beachheads in Korea; our duty here at home is plain, to protect the "beachheads" involving internal and national security.

Mr. Bridges, according to his counsel, Mr. MacInnis, instituted a "delaying action" in connection with pending and vital resolutions before his union. I say he will continue to engage in "delaying action" so long as this country is engaged in any conflict wherein Communists are on the other side.

The complete answer is that on our waterfront here and elsewhere, we cannot have delaying actions in the prosecution of the war effort.

Under the circumstances of this case to throw a mantle of protection over Harry Bridges' conduct, based upon the Bill of Rights, would constitute a travesty and mockery of our institutions.

Accordingly, in the exercise of a sound discretion and for good cause shown, I revoke and vacate the order made on April 10, 1950, admitting the defendant, Harry Bridges, to bail in the amount of $25,000. The defendant, Harry Renton Bridges, be, and he is hereby, remanded to the custody of the United States Marshal. Government counsel may present such order as may be consistent with the views which I have announced.

The record may further show that I denied defendant's motion to dismiss, filed herein on August 2, 1950, as well as the motion to strike, which was similarly filed.