UNITED STATES of America, Plaintiff,

v.

John A. NAPLES, Defendant.

Cr. No. 91–59.

United States District Court District of Columbia.

May 24, 1962.

Albert J. Ahern, Jr., and Charles W. Halleck, Washington, D. C., for defendant, for the motion.

David C. Acheson, U. S. Atty., and Frederick G. Smithson, Asst. U. S. Atty., District of Columbia, for the United States.

HOLTZOFF, District Judge.

This is a motion by the defendant to vacate the convictions on Counts 2, 3 and 4 of the indictment.

The defendant was tried on an indictment containing four counts, charging murder in the first degree in counts one and two, housebreaking in the third count, and petit larceny in the fourth count. A trial by jury was waived by the defendant and the case was tried by the Court alone. On March 9, 1961, the Court found the defendant guilty of murder in the first degree on the first count; guilty of murder in the second degree on the second count; guilty of housebreaking on the third count; and guilty of petit larceny on the fourth count of the indictment, United States v. Naples, D. C., 192 F.Supp. 23. The Court imposed a mandatory death sentence on the first count, and held sentence on counts two, three and four in abeyance.

An appeal was taken from the judgment of conviction on the first count. On May 8, 1962, the conviction on the first count was reversed by the Court of Appeals and a new trial ordered in an opinion written by Judge Danaher. Judge Bastian, with whom Chief Judge Wilbur K. Miller joined, filed a dissenting opinion. D.C.Cir., —— F.2d ——.

Counsel for the defendant now move that the findings of guilt on Counts 2, 3 and 4 be vacated, asserting that the ground on which the conviction on the first count was reversed by the Court of Appeals, was equally applicable to the convictions on the other three counts.

Judicial etiquette and canons of good taste preclude a judge from discussing, outside of proper judicial channels, any statements concerning him or his actions, irrespective of whether they were made by other judges or by persons outside of the judiciary, and irrespective of whether they were correct or incorrect, justified or unjustified. For this reason my lips have been sealed in respect to Judge Danaher's unique opinion in this case.

In connection with the matter now before me, however, it becomes a part of my judicial function and my duty to analyze Judge Danaher's opinion, in order to determine to what extent, if at all, it bears on the pending motion. This is no easy task. I shall, however, endeavor to perform it. Judge Danaher's opinion is exceedingly prolix and constitutes a disorganized, desultory diatribe discussing a number of different topics and, with but a single exception, coming to no conclusion as to any of them. Interspersed are a number of personal observations in a somewhat petulant tone. For example, Judge Danaher seems to be piqued by the fact that at one time I wrote two articles for the American Bar Association Journal praising the English Appellate Courts.[1] At another point, he seems to express chagrin at my omission to cite decisions of the Court of Appeals for the District of Columbia discussing the Durham case.

Leaving aside all irrelevant comments and winnowing Judge Danaher's opinion, a close and intensive analysis leads to the conclusion that only one point was actually decided and, that on this basis, the conviction was reversed. The only ruling contained in Judge Danaher's opinion is that a statement made by the defendant within an hour after his arrest at the premises where the crime was committed, known in police parlance as "a re-enactment of the crime", should not have been admitted in evidence. I might say in passing that in admitting this statement I followed the decisions of the Court of Appeals in United States v. Heideman, 104 U.S.App.D.C. 128, 259 F.2d 943, affirming D.C., 21 F.R.D. 335; and Goldsmith v. United States, 107 U.S. App.D.C. 305, 277 F.2d 335, in both of which the opinion was written by Judge Burger. The two opinions were discussed by me in some detail. Yet Judge Danaher did not attempt to distinguish or overrule either of these two decisions of the very Court of which he is a member, but entirely ignored them in connec-

---

1. See Footnote 42 of Judge Danaher's opinion.

tion with this point in his opinion. Whether the Heideman and Goldsmith cases must be deemed to have been overruled by necessary implication *sub silentio* is a matter for future determination. So, too, Judge Danaher overlooked or ignored the statement contained in my opinion that even if the re-enactment had been excluded, I would have reached the same conclusion on the other evidence in the case.

Be that as it may, it is now the law of this case that the so-called re-enactment of the crime, which was voluntarily made by the defendant within an hour after his arrest, was not admissible in evidence.

It is, of course, not disputed that the defendant committed the murder and the other offenses for which he was tried. Perhaps thinking people, be they laymen or lawyers, might well ask, why then was the conviction reversed.

In connection with my analysis of Judge Danaher's opinion, it seems pertinent to add that there has been a growing misunderstanding as to the respective functions of trial and appellate courts. Those who are steeped in the history and traditions of the common law need not be reminded that for centuries the common law grew and developed as a result of decisions by trial judges at Westminster Hall and in Assize towns. They saw the litigants, they heard the witnesses, and they came to know the customs and needs of the community. This is one of the sources of the vigor of the common law. Intermediate appellate courts grew up subsequently. They have an important function to perform, namely, so to speak, to take a second look at a case, in order that a litigant would have the advantage of the decisions of two courts. They are not necessarily superior in wisdom or scholarship. They have the disadvantage of not seeing the litigants, but having only a printed or typewritten transcript of what occurred at the trial. Their sole function is to affirm, reverse, or modify the decision of the trial court, and not to supervise or censure trial judges. To be sure, the phrase "supervisory jurisdiction" has occasionally been used in recent years. This is a picturesque and an apt figure of speech and, as such it has its usefulness, but like figures of speech generally, it must not be taken seriously or literally. Strictly speaking, intermediate appellate courts have no supervisory jurisdiction.

The Supreme Court some years ago charted the course that must be followed in the trial of criminal cases in the Federal courts, in an opinion by Mr. Justice Cardozo, in Snyder v. Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674:

> "But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."

This observation has been oft repeated, but it bears more reiteration.

Since the same evidence was used to connect the defendant with the crimes charged in Counts 2, 3 and 4 as was employed in connection with Count 1, any evidence inadmissible on that issue as to Count 1 would be equally inadmissible as to Counts 2, 3 and 4. Consequently, since a new trial is to be had as ordered by the Court of Appeals on Count 1 of the indictment, such new trial should embrace all four counts.

While the written motion before the Court merely prays for an order vacating the convictions on Counts 2, 3 and 4, it was orally amended by counsel for the defendant so as to ask for a new trial on these counts. The United States Attorney, very properly, has agreed in open court that the time limitation contained in Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. should not be invoked under the peculiar circumstances of this case.

Accordingly, the findings of guilty on Counts 2, 3 and 4 of the indictment are hereby vacated, and a new trial granted as to them.